☒ FILED ____ LODGED
____ RECEIVED ____ COPY

AUG 2 5 2005

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

United States of America,

   Plaintiff,

 v.

Jennifer R. Clason,
Jeffrey A. Kilbride, and
James R. Schaffer,

   Defendants

---

**CR05- 870PHX** - *RGS*
*(LOA)*

**INDICTMENT**

VIO: Count One: 18 U.S.C. § 371
   (Conspiracy)

Count Two: 18 U.S.C. §§ 1037(a)(3)
(Fraud in Connection with Electronic
Mail) and § 2 (Aiding and Abetting)

Count Three: 18 U.S.C. §§ 1037 (a)(4)
(Fraud in Connection with Electronic
Mail) and § 2

Counts Four-Five: 18 U.S.C. § 1462
(Importation or Transportation of
Obscene Matters) and § 2

Counts Six-Seven: 18 U.S.C. § 1465
(Transportation of Obscene Matters for
Sale or Distribution) and § 2

Count Eight: 18 U.S.C. § 1956(h)
(Laundering of Monetary Instruments)

Count Nine: 18 U.S.C. §§ 2257(f)(3) and
(f)(4) (Record Keeping Requirements)
and § 2

Forfeiture Allegations: 18 U.S.C. §§
982(a)(1), 1037(c), and 1467

THE GRAND JURY CHARGES:

## COUNT ONE (Conspiracy)

## Background

1.     Between on or about January 1, 2004, and April 12, 2005, in the District of Arizona and elsewhere, the defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, did knowingly conspire with one another to knowingly falsify header information in multiple commercial electronic mail messages, and intentionally initiate the transmission of such messages, in violation of Title 18, United States Code, Section 1037(a)(3), and to knowingly register, using information that materially falsified the identity of the actual registrant, for two or more domain names, and intentionally initiate the transmission of multiple commercial electronic mail messages from this combination of domain names, in violation of Title 18, United States Code, Section 1037(a)(4).

## Object of the Conspiracy

2.     It was the purpose and object of the conspiracy to engage in the business of sending bulk unsolicited commercial electronic mail messages, commonly known as "spam messages", some with embedded pornographic images, over the Internet for the personal gain, benefit, profit and advantage of the defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury.

## Manner and Means of the Conspiracy

3.     It was part of the conspiracy that the defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, created, operated, and managed a computer network and, using this network, transmitted spam messages in a manner that would impair the ability of recipients, Internet service providers processing the messages on behalf of recipients, and law enforcement agencies to identify, locate, or respond to the senders.

4.     It was further part of the conspiracy that his deception was aided by installing the computers sending the spam messages and related equipment in the Netherlands, and remotely

2

1    controlling these computers from the United States, utilizing Internet-related services provided

2    at a facility located in Phoenix, Arizona.

3        5.    It was further part of the conspiracy that the spam messages themselves failed to

4    truthfully disclose their origin (their attached routing information and "From:" line) or subject

5    matter (the "Subject:" line), and were sent from Internet Protocol ("IP") addresses registered in

6    the Kingdom of the Netherlands and at least 194 domain names registered in the Republic of

7    Mauritius.

8        6.    It was further part of the conspiracy that the defendants JENNIFER R. CLASON,

9    JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the

10   Grand Jury, formed, managed, and operated certain business entities under a variety of names

11   including, but not limited to, Cardpro Limited, Data Design Group, Fat Dog Ventures, Highvale

12   Holdings, iCapSolutions, JLM Media, Kobalt Networks, LBFM Ventures, Lightspeed Holdings,

13   Matab Marketing, MLJ Media, MMM Holdings, PJ Investments Group, Relia Networks, and

14   VisionNet.

15       7.    It was further part of the conspiracy that the defendants, JENNIFER R. CLASON,

16   JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the

17   Grand Jury, created and utilized various companies, including The Compliance Company and

18   Ganymede Marketing, whose sole purpose was to conceal and disguise activities related to the

19   business of sending spam messages.

20       8.    It was further part of the conspiracy that defendant JENNIFER R. CLASON used

21   software created for the purpose of delivering large volumes of spam messages in order to design

22   and transmit large volumes of spam messages at the direction of defendants JEFFREY A.

23   KILBRIDE and JAMES R. SCHAFFER.

24       9.    It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and

25   JAMES R. SCHAFFER advertised pornographic commercial World Wide Web sites on the

26   Internet by embedding pornographic images in these spam messages. Many of the "Subject:"

27   lines in the spam messages were deliberately inoffensive in nature. This caused unwitting

28
                                            3

Internet users to open these messages, which appeared to be non-pornographic until opened, and be exposed to undesired pornographic images. The embedded pornographic images appeared immediately when the message was opened by the recipient. The Internet user did not have to click a button or other element within the message to reveal the images.

10.     It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER earned commissions for directing Internet traffic to the pornographic World Wide Web sites advertised in the spam messages. Each of the spam messages contained a unique identifying code, such that when any recipient of one of the spam messages then visited one of the advertised pornographic World Wide Web sites (through a command known as a "hyperlink"), that unique identifying code was relayed to the operators of the pornographic site. The businesses operating the World Wide Web sites would then pay defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER through arrangements called "affiliate programs" that manage these payments. Defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER were paid based on the number of persons who visited and/or purchased access to the sites as a result of the spam messages. Therefore, the more spam messages sent, the greater the potential for defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER to profit from them.

11.     It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, deposited payments received from these pornographic commercial World Wide Web sites into financial accounts under their control in the United States, Mauritius, and the Isle of Man (a dependency of the United Kingdom of Great Britain and Northern Ireland), in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds. These proceeds would then be distributed via wire transfer to domestic financial accounts under their control, and the control of defendant JENNIFER R. CLASON and others known and unknown to the Grand Jury.

## Overt Acts

12.     In furtherance of the conspiracy and to achieve its objects, one or more of the

1   members of the conspiracy committed the following overt acts, among others, in the District of

2   Arizona and elsewhere, on or about the following dates:

3   Transmission of spam messages

4   a. Between on or about January 30, 2004, and November 10, 2004, the

5   defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER,

6   transmitted over 600,000 spam messages advertising pornographic commercial World Wide

7   Web sites that operated affiliate programs and containing pornographic images.  The spam

8   messages were sent from IP addresses registered at an address in the Netherlands and using

9   domain names registered to Ganymede Marketing at an address in Mauritius.  IP addresses

10   function to reference every computer or device on the Internet while connected with the Internet,

11   and are a series of four numbers separated by a period (e.g., 63.161.169.137).  A domain name

12   is a common, easy-to-remember name associated with an IP address with two or more parts,

13   separated by dots (e.g., whitehouse.gov).

14   Acts related to equipment, IP addresses, and Internet services used in transmission of

15   spam messages

16   b. On numerous occasions between on or about January 1, 2004, and June 19,

17   2004, ANDREW D. ELLIFSON purchased computer and computer-related equipment at the

18   direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER.

19   c. On numerous occasions between on or about January 2, 2004, and

20   September 28, 2004, ANDREW D. ELLIFSON made payments, from domestic financial

21   accounts under his control, for Internet services with exclusive use of groups of IP addresses,

22   some of which were used to send the spam messages.  These IP addresses were registered by

23   ANDREW D. ELLIFSON at an address in the Netherlands, even though they had an associated

24   service address at a facility in Phoenix, Arizona.  These Internet services were obtained at the

25   direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER.

26   d. On or about January 16, 2004, at the direction of defendants JEFFREY A.

27   KILBRIDE and JAMES R. SCHAFFER, ANDREW D. ELLIFSON traveled to the Netherlands

28

to install several computers at a facility called Telecity BV, which had the same address as the registration address listed for the IP addresses. These computers were to be used to transmit spam messages, making it appear that the senders were abroad when they were in fact in the United States. ANDREW D. ELLIFSON also installed two workstation computers at the Telecity BV facility that he had dedicated for the use of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER.

e.     On at least six occasions between on or about February 12, 2004, and June 25, 2004, at the direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER, ANDREW D. ELLIFSON made payments totaling at least $8,516.28 from domestic financial accounts under his control for Internet access services from provider Verio which were installed at the Telecity BV facility in The Netherlands.

f.     On or about February 23, 2004, and June 5, 2004, at the direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER, ANDREW D. ELLIFSON sent two wire transfer payments totaling at least $7,700.59 from domestic financial accounts under his control to Netherlands financial accounts under the control of Telecity BV.

g.     On or about May 14, 2004, ANDREW D. ELLIFSON traveled to the Netherlands to install and maintain computer equipment at the Telecity BV facility at the direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER.

h.     On or about August 23, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 submitted a service order form to Verio for Internet access services at the Telecity BV facility.

i.     On or about August 24, 2004, ANDREW D. ELLIFSON, at the direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER, traveled to the Netherlands to install and maintain computer equipment at the Telecity BV facility, including the computers that transmitted the spam messages and equipment related to the transfer of the Verio service.

j.     On at least three occasions between on or about August 27, 2004, and November 22, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and

1 UNINDICTED CO-CONSPIRATOR #1 made payments totaling at least $14,056.59 from

2 Deutsche Bank (Mauritius) Limited financial accounts in Port Louis, Mauritius under their

3 control for Internet access services from provider Verio which were installed at the Telecity BV

4 facility.

5         k.       On or about November 8, 2004, and November 30, 2004, defendants

6 JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR

7 #1 made two payments totaling at least $11,856.81 from Deutsche Bank (Mauritius) financial

8 accounts under their control to Netherlands financial accounts under the control of Telecity BV.

9         Acts related to domain names used in transmission of spam messages

10         l.       On or about February 14, 2004, defendants JEFFREY A. KILBRIDE and

11 JAMES R. SCHAFFER registered numerous domain names, some of which were used to send

12 the spam messages, to Ganymede Marketing at an address in Mauritius.  They paid for these

13 domain names using a credit card in the name of UNINDICTED CO-CONSPIRATOR #1 with

14 a billing address located in the Isle of Man.

15         m.      On or about April 30, 2004, defendants JEFFREY A. KILBRIDE and

16 JAMES R. SCHAFFER accessed an online account controlling the domain names registered to

17 Ganymede Marketing used to transmit the spam messages for the purpose of changing the

18 contact telephone number associated with the account.

19         Acts related to electronic mail addresses used in transmission of spam messages

20         n.       On multiple occasions between on or about February 12, 2004, and March

21 2, 2004, defendant JAMES R. SCHAFFER, using a false identity, used an Internet chat service

22 named I Seek You ("ICQ") to correspond with another individual about the purchase of a list of

23 of electronic mail addresses for the use of defendants JEFFREY A. KILBRIDE and JAMES R.

24 SCHAFFER from the individual.

25         o.       On or about February 19, 2004, defendants JEFFREY A. KILBRIDE and

26 JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent a wire transfer

27 payment, totaling at least $8,400.00, for the purchase of a list of electronic mail addresses, from

28

1   Deutsche Bank (Mauritius) financial accounts under their control to the individual with whom

2   defendant JAMES R. SCHAFFER had corresponded over ICQ beginning on February 12, 2004.

3   <u>Communications concerning the transmission of spam messages</u>

4           p.     On multiple occasions between on or about February 18, 2004, and March

5   4, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER used ICQ to discuss

6   issues related to the transmission of the spam messages with one another.

7           q.     On numerous occasions between on or about February 7, 2004, and

8   December 1, 2004, defendant JAMES R. SCHAFFER, using a false identity, used ICQ to

9   discuss issues related to the transmission of the spam messages with employees of pornographic

10  commercial World Wide Web site operators.

11          r.     On numerous occasions between on or about March 5, 2004, and March 19,

12  2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED

13  CO-CONSPIRATOR #2 used an Internet service named Internet Relay Chat to discuss issues

14  related to the transmission of the spam messages with one another.

15  <u>Acts concerning the proceeds obtained from the transmission of spam messages</u>

16          s.     <u>Deposits into domestic financial accounts:</u> On at least 34 occasions between

17  on or about January 29, 2004, and October 6, 2004, defendants JEFFREY A. KILBRIDE and

18  JAMES R. SCHAFFER deposited checks totaling at least $39,382.64 from affiliate programs

19  operated by pornographic commercial World Wide Web sites into domestic financial accounts

20  under their control.

21          t.     <u>Withdrawals from domestic financial accounts:</u>

22                 (i)     On at least six occasions between on or about January 1, 2004, and

23  March 15, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER sent checks

24  or transfers totaling at least $25,000.02 from domestic financial accounts under their control to

25  domestic financial accounts under the control of UNINDICTED CO-CONSPIRATOR #2.

26  These checks constituted payments to UNINDICTED CO-CONSPIRATOR #2 for his work in

27  creating computer programs at the direction of defendants JEFFREY A. KILBRIDE and JAMES

28                                              8

1 R. SCHAFFER for the purpose of delivering large volumes of spam messages.

2            (ii)    On at least five occasions between on or about January 15, 2004, and
3 March 5, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER sent checks
4 totaling at least $68,988.57 from domestic financial accounts under their control to domestic
5 financial accounts under the control of defendant JEFFREY A. KILBRIDE.

6            (iii)    On at least five occasions between on or about January 27, 2004, and
7 June 27, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER sent checks
8 totaling at least $41,000.00 from domestic financial accounts under their control to domestic
9 financial accounts under the control of defendant JAMES R. SCHAFFER.

10        u.    Deposits into financial accounts at Deutsche Bank (Mauritius): On at least
11 74 occasions between on or about February 11, 2004, and December 6, 2004, defendants
12 JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR
13 #1 deposited checks and wire transfers totaling at least $1,217,348.49 from affiliate programs
14 operated by pornographic commercial World Wide Web sites into Deutsche Bank (Mauritius)
15 financial accounts in Port Louis, Mauritius under their control.

16        v.    Withdrawals from financial accounts at Deutsche Bank (Mauritius):

17            (i)    On or about January 29, 2004, and March 31, 2004, defendants
18 JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR
19 #1 sent two wire transfer payments, totaling at least $355,000.00, from Deutsche Bank
20 (Mauritius) financial accounts under their control to domestic financial accounts under the
21 control of defendant JAMES R. SCHAFFER.

22            (ii)    On at least ten occasions between on or about February 2, 2004, and
23 August 23, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and
24 UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least
25 $178,020.00, from Deutsche Bank (Mauritius) financial accounts and purportedly issued by
26 Ganymede Marketing, to domestic financial accounts under the control of ANDREW D.
27 ELLIFSON. These wire transfers constituted payments to ANDREW D. ELLIFSON for his

28                                 9

1    work in assisting in the creation, operation, and management of the computer network used to
2    transmit the spam messages at the direction of defendants JEFFREY A. KILBRIDE and JAMES
3    R. SCHAFFER.

4                (iii)    On or about June 24, 2004, defendants JEFFREY A. KILBRIDE and
5    JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent a wire transfer of at
6    least $500,000.00 from Deutsche Bank (Mauritius) financial accounts under their control to
7    domestic financial accounts under the control of Stronghold Capital International for the benefit
8    of defendant JEFFREY A. KILBRIDE.

9                w.    Transfers from financial accounts at Deutsche Bank (Mauritius) to financial
10   accounts at Close Bank (Isle of Man): On or about December 1, 2004, and December 6, 2004,
11   in response to a decision by Deutsche Bank (Mauritius) to close their accounts, defendants
12   JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR
13   #1 transferred funds totaling at least $474,699.13 from Deutsche Bank (Mauritius) financial
14   accounts under their control to financial accounts under their control at Close Bank (Isle of Man)
15   Limited in Douglas, Isle of Man.

16               x.    Transfers from financial accounts at Deutsche Bank (Mauritius) to financial
17   accounts at Isle of Man Bank: On at least ten occasions between on or about January 19, 2004,
18   and November 8, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and
19   UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least
20   $497,334.71, from Deutsche Bank (Mauritius) financial accounts under their control to financial
21   accounts under their control at Isle of Man Bank Limited in Douglas, Isle of Man.

22               y.    Transfers from financial accounts at Close Bank (Isle of Man) to financial
23   accounts at Isle of Man Bank: On at least three occasions between on or about December 17,
24   2004, and February 16, 2005, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER
25   and UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least
26   $88,874.99, from Close Bank (Isle of Man) financial accounts under their control to financial
27   accounts under their control at Isle of Man Bank.

28
                                        10

z.     <u>Withdrawals from financial accounts at Isle of Man Bank:</u>

(i)     On at least ten occasions between on or about April 16, 2004, and February 18, 2005, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least $225,000.00, from Isle of Man Bank financial accounts under their control and purportedly issued by The Compliance Company, to domestic financial accounts under the control of defendant JEFFREY A. KILBRIDE.

(ii)     On at least eleven occasions between on or about April 16, 2004, and February 18, 2005, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least $135,000.00, from Isle of Man Bank financial accounts under their control and purportedly issued by The Compliance Company, to domestic financial accounts under the control of defendant JAMES R. SCHAFFER.

(iii)     On at least eleven occasions between on or about April 16, 2004, and February 18, 2005, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least $91,666.74, from Isle of Man Bank financial accounts under their control and purportedly issued by The Compliance Company, to domestic financial accounts under the control of UNINDICTED CO-CONSPIRATOR #2.   These wire transfers constituted payments to UNINDICTED CO-CONSPIRATOR #2 for his work in programming the computers that transmitted the spam messages, at the direction of defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER.

(iv)     On at least seven occasions between on or about April 16, 2004, and November 16, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least $30,000.00, from Isle of Man Bank financial accounts under their control and purportedly issued by The Compliance Company, to domestic financial accounts under the control of defendant

1    JENNIFER R. CLASON. These wire transfers constituted payments to defendant JENNIFER

2    R. CLASON for her work in using the programs created by UNINDICTED CO-

3    CONSPIRATOR #2 to design and transmit large volumes of spam messages, at the direction of

4    defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER.

5                    (v)    On at least six occasions between on or about April 16, 2004, and

6    October 12, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and

7    UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least

8    $36,000.00, from Isle of Man Bank financial accounts under their control and purportedly issued

9    by The Compliance Company, to domestic financial accounts under the control of ANDREW

10   D. ELLIFSON. These wire transfers constituted payments to ANDREW D. ELLIFSON for his

11   work in assisting in the creation, operation, and management of the computer network used to

12   transmit the spam messages, at the direction of defendants JEFFREY A. KILBRIDE and JAMES

13   R. SCHAFFER.

14                   (vi)    On or about November 15, 2004, defendants JEFFREY A.

15   KILBRIDE and JAMES R. SCHAFFER and UNINDICTED CO-CONSPIRATOR #1 sent a

16   wire transfer payment, totaling at least $40,040.00, from Isle of Man Bank financial accounts

17   under their control and purportedly issued by The Compliance Company, to financial accounts

18   under the control of defendant JAMES R. SCHAFFER at SBM Nedbank International Limited

19   in Port Louis, Mauritius.

20                   (vii)    On at least three occasions between on or about December 17, 2004,

21   and February 16, 2005, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and

22   UNINDICTED CO-CONSPIRATOR #1 sent wire transfer payments, totaling at least

23   $88,874.99, from Isle of Man Bank financial accounts under their control and purportedly issued

24   by The Compliance Company, to financial accounts under their control at Close Bank (Isle of

25   Man) Limited in Douglas, Isle of Man.

26           All in violation of Title 18, United States Code, Section 371.

27

28

**COUNT TWO (Fraud in Connection with Electronic Mail)**

1.     Between on or about January 30, 2004, and November 10, 2004, in the District of Arizona and elsewhere, the defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly and materially falsify header information in multiple commercial electronic mail messages, and intentionally initiate the transmission of such messages.

2.     It is further alleged as follows:

        a.     The volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24 hour period, 25,000 during any 30-day period, or 250,000 during any 1-year period;

        b.     The offense caused loss to one or more persons aggregating $5,000 or more in value during any 1-year period; and

        c.     As a result of the offense any individual committing the offense obtained anything of value aggregating $5,000.00 or more during any 1-year period.

All in violation of Title 18, United States Code, Section 1037(a)(3), punishable under Title 18, United States Code, Section 1037(b)(2), and Title 18, United States Code, Section 2.

**COUNT THREE (Fraud in Connection with Electronic Mail)**

1.     Between on or about January 30, 2004, and November 10, 2004, in the District of Arizona and elsewhere, the defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly register, using information that materially falsified the identity of the actual registrant, for two or more domain names, and intentionally initiate the transmission of multiple commercial electronic mail messages from this combination of domain names.

2.     It is further alleged as follows:

        a.     The volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24 hour period, 25,000 during any 30-day period, or 250,000 during any 1-year period;

1            b.      The offense caused loss to one or more persons aggregating $5,000 or more

2 in value during any 1-year period; and

3            c.      As a result of the offense any individual committing the offense obtained

4 anything of value aggregating $5,000.00 or more during any 1-year period.

5      All in violation of Title 18, United States Code, Section 1037(a)(4), punishable under

6 Title 18, United States Code, Section 1037(b)(2), and Title 18, United States Code, Section 2.

7

8                **COUNT FOUR (Importation or Transportation of Obscene Matters)**

9      On or about July 3, 2004, in the District of Arizona and elsewhere, defendants JEFFREY

10 A. KILBRIDE and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury,

11 aiding and abetting each other, knowingly used an interactive computer service for carriage in

12 interstate commerce of obscene matter, that is, "Fist Action!", a computer graphic image.

13      All in violation of Title 18, United States Code, Section 1462, Title 18, United States

14 Code, Section 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

15

16                **COUNT FIVE (Importation or Transportation of Obscene Matters)**

17      On or about September 17, 2004, in the District of Arizona and elsewhere, defendants

18 JEFFREY A. KILBRIDE and JAMES R. SCHAFFER, and others known and unknown to the

19 Grand Jury, aiding and abetting each other, knowingly used an interactive computer service for

20 carriage in interstate commerce of obscene matter, that is, "Ass Munchers", a computer graphic

21 image.

22      All in violation of Title 18, United States Code, Section 1462, Title 18, United States

23 Code, Section 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

24

25                **COUNT SIX (Transportation of Obscene Matters for Sale or Distribution)**

26      On or about July 3, 2004, in the District of Arizona and elsewhere, defendants JEFFREY

27 A. KILBRIDE and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury,

28 aiding and abetting each other, knowingly caused to be transported in interstate commerce, and

used a facility of interstate commerce, for the purpose of sale and distribution, obscene matter, that is, "Fist Action!", a computer graphic image.

All in violation of Title 18, United States Code, Section 1465, Title 18, United States Code, Section 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## COUNT SEVEN (Transportation of Obscene Matters for Sale or Distribution)

On or about September 17, 2004, in the District of Arizona and elsewhere, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly caused to be transported in interstate commerce, and used a facility of interstate commerce, for the purpose of sale and distribution, obscene matter, that is, "Ass Munchers", a computer graphic image.

All in violation of Title 18, United States Code, Section 1465, Title 18, United States Code, Section 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## COUNT EIGHT (Laundering of Monetary Instruments)

1.  The Grand Jury re-alleges and incorporates the allegations of Counts One through Seven of this Indictment as though fully set forth herein.

2.  Between on or about January 1, 2004, and January 24, 2005, in the District of Arizona and elsewhere, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER did knowingly, intentionally, and unlawfully conspire together with one another, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

   a.  To knowingly and willfully conduct and attempt to conduct financial transactions involving property representing the proceeds of specified unlawful activities, that is:

      (i)   the use of an interactive computer service for carriage in interstate commerce of obscene matter, as set forth in Counts Four through Five of this Indictment, contrary to the provisions of 18 U.S.C. § 1462; and

15

1            (ii)     to cause to be transported in interstate commerce, and use a facility

2  of interstate commerce, for the purpose of sale and distribution, obscene matter, as set forth in

3  Counts Six and Seven of this Indictment, contrary to the provisions of 18 U.S.C. § 1465;

4        all with the intent to promote the carrying on of the specified unlawful activities, in

5  violation of 18 U.S.C. § 1956(a)(1)(A)(i);

6            b.     To knowingly and willfully conduct and attempt to conduct financial

7  transactions involving property representing the proceeds of the specified unlawful activities set

8  forth in subparagraph 2(a) of this Count, with the knowledge that the transactions were designed

9  in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or

10  the control of the proceeds of the specified unlawful activities, in violation of 18 U.S.C. §

11  1956(a)(1)(A)(ii);

12            c.     To knowingly and willfully transport, transmit, and transfer, and attempt

13  to transport, transmit, and transfer, a monetary instrument or funds from a place in the United

14  States to or through a place outside the United States or to a place in the United States from or

15  through a place outside the United States, with the intent to promote the carrying on of the

16  specified unlawful activities set forth in subparagraph 2(a) of this Count, in violation of 18

17  U.S.C. § 1956(a)(2)(A); and

18            d.     To knowingly and willfully transport, transmit, and transfer, and attempt

19  to transport, transmit, and transfer, a monetary instrument or funds from a place in the United

20  States to or through a place outside the United States or to a place in the United States from or

21  through a place outside the United States, knowing that the monetary instrument or funds

22  involved in the transportation, transmission, and transfer represented the proceeds of some form

23  of unlawful activity, that is, to knowingly falsify header information in multiple commercial

24  electronic mail messages, and intentionally initiate the transmission of such messages, in

25  violation of Title 18, United States Code, Section 1037(a)(3), and to knowingly register, using

26  information that materially falsified the identity of the actual registrant, for two or more domain

27  names, and intentionally initiate the transmission of multiple commercial electronic mail

28  messages from this combination of domain names, in violation of Title 18, United States Code,

1  Section 1037(a)(4), as set forth in Counts One through Three of this Indictment, and knowing

2  that such transportation, transmission, or transfer is designed in whole or in part to conceal or

3  disguise the nature, the location, the source, the ownership, or the control of the proceeds of the

4  specified unlawful activities set forth in subparagraph 2(a) of this Count, in violation of 18

5  U.S.C. § 1956(a)(2)(B)(ii).

6  **Manner and Means of the Conspiracy**

7      3.      It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and

8  JAMES R. SCHAFFER embedded the obscene images set forth in Counts Four through Seven

9  of this Indictment in one or more of the spam messages set forth in Counts One through Three

10  of this Indictment. These obscene images advertised pornographic commercial World Wide

11  Web sites, as set forth in Count One of this Indictment.

12     4.      It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and

13  JAMES R. SCHAFFER selected these obscene images for placement in the spam messages.

14     5.      It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and

15  JAMES R. SCHAFFER earned commissions from affiliate programs for directing Internet traffic

16  to these pornographic commercial World Wide Web sites using the spam messages containing

17  the obscene images, as set forth in Count One of this Indictment.

18     6.      It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and

19  JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, caused the payments

20  received from these pornographic commercial World Wide Web sites related to the spam

21  messages containing the obscene images to be deposited into both domestic financial accounts

22  and overseas financial accounts they controlled, in order to conceal and disguise the nature,

23  location, source, ownership, and control of the proceeds, as set forth in Count One of this

24  Indictment. These proceeds would then be distributed via wire transfer to domestic financial

25  accounts under their control, and the control of JENNIFER R. CLASON and others known and

26  unknown to the Grand Jury, as set forth in Count One of this Indictment.

27     7.      It was further part of the conspiracy that defendants JEFFREY A. KILBRIDE and

28  JAMES R. SCHAFFER, and others known and unknown to the Grand Jury, used an interactive

17

1  computer service to cause the obscene images to be transported in interstate commerce.

2                                      **Overt Acts**

3          8.      In furtherance of the conspiracy and to achieve its objects, one or more of the

4  members of the conspiracy committed the following additional overt acts, among others, in the

5  District of Arizona and elsewhere, on or about the following dates:

6                  a.      On at least nine occasions between on or about August 12, 2004, and

7  December 26, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and

8  UNINDICTED CO-CONSPIRATOR #1 deposited checks and wire transfers totaling at least

9  $52,173.29 from Beano Publishing LLC into Deutsche Bank (Mauritius) financial accounts

10  under their control. Beano Publishing LLC markets a World Wide Web site advertised by the

11  image set forth in Counts Five and Seven of this Indictment.

12                 b.      On at least three occasions between on or about September 3, 2004, and

13  October 19, 2004, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER and

14  UNINDICTED CO-CONSPIRATOR #1 deposited checks and wire transfers totaling at least

15  $19,705.00 from Uncaged Marketing, Inc. into Deutsche Bank (Mauritius) financial accounts

16  under their control. Uncaged Marketing, Inc. markets World Wide Web sites advertised by the

17  images set forth in Counts Four and Six of this Indictment.

18          All in violation of Title 18, United States Code, Section 1956(h).

19

20                  **COUNT NINE (Record Keeping Requirements)**

21          On or about March 22, 2005, in the District of Arizona and elsewhere, defendant JAMES

22  R. SCHAFFER, and others known and unknown to the Grand Jury, aiding and abetting each

23  other, did knowingly fail to cause to be affixed to the World Wide Web sites "Boobs.com",

24  "Cumshots.com", and "Facesat", which contained visual depictions made after November 1,

25  1990 of actual sexually explicit conduct and were produced with materials which had been

26  mailed and shipped in interstate commerce, a statement describing where records pertaining to

27  all performers depicted on these sites may be located.

28          All in violation of Title 18, United States Code, Sections 2257(f)(3) and (4) and Title 18,

                                           18

1    United States Code, Section 2.

2

3                           **FORFEITURE ALLEGATIONS**

4        1.    The Grand Jury re-alleges and incorporates the allegations of Counts One through

5    Eight of this Indictment as though fully set forth herein, for the purpose of alleging forfeiture.

6        2.    If convicted of the offenses set forth in Counts Two and Three of this Indictment,

7    the defendants, JENNIFER R. CLASON, JEFFREY A. KILBRIDE, and JAMES R.

8    SCHAFFER, shall forfeit any and all property, real or personal, constituting or traceable to gross

9    proceeds obtained from the commission of said offense, and any equipment, software, or other

10   technology used or intended to be used to commit or facilitate the commission of said offense.

11   Such property includes, but is not limited to, the following specific items:

12        a.    A sum of money equal to $1,256,731.13 in United States currency,

13   representing the amount of proceeds obtained as a result of the offense, for which the defendants

14   are jointly and severally liable.

15        b.    All United States currency funds or other monetary instruments credited to

16   account number XXXXXX3951, up to a total of $30,000.00, in the name of JENNIFER

17   CLASON, located at Bank of America, N.A., 1801 East Southern Avenue, Tempe, Arizona

18   85282.

19        c.    All United States currency funds or other monetary instruments credited to

20   account number XXXXXX7926, up to a total of $61,190.23, in the name of JEFFREY

21   KILBRIDE, located at Wells Fargo Bank, N.A., 480 Washington Boulevard, Marina Del Ray,

22   California 90292.

23        d.    All United States currency funds or other monetary instruments credited to

24   account number XXXX-6242, up to a total of $500,000, in the name of THE LBFM

25   VENTURES TRUST, located at Stronghold Funding, Inc., 102 Culpeper Street, Warrenton,

26   Virginia 20186.

27        e.    All United States currency funds or other monetary instruments credited to

28   account number XXXXXX3258, up to a total of $115,000, in the name of MMM HOLDINGS

1  LLC, located at Wells Fargo Bank, N.A., 8675 North Scottsdale Road, Scottsdale, Arizona
2  85253.

3      3.      If convicted of the offenses set forth in Counts Four through Seven of this
4  Indictment, defendants JEFFREY A. KILBRIDE and JAMES R. SCHAFFER shall forfeit all
5  obscene material produced, transported, mailed, shipped and received, and all property, real or
6  personal, constituting or traceable to gross profits or other proceeds obtained from such offenses,
7  and all property, real or personal, used or intended to be used to commit or to promote the
8  commission of said offenses. Such property includes, but is not limited to, the following specific
9  item:

10      a.      A sum of money equal to $71,878.29 in United States currency,
11  representing the amount of proceeds obtained as a result of the offenses, for which the
12  defendants are jointly and severally liable.

13      4.      If convicted of the offense set forth in Count Eight of this Indictment, defendants
14  JEFFREY A. KILBRIDE and JAMES R. SCHAFFER shall forfeit the following property:

15      a.      All right, title, and interest in any and all property involved in each offense
16  in violation of 18 U.S.C. § 1956, or conspiracy to commit such offense, for which the defendant
17  is convicted, and all property traceable to such property, including all money or other property
18  that was the subject of each transaction, transportation, transmission or transfer in violation of
19  Section 1956; all commissions, fees and other property constituting proceeds obtained as a result
20  of those violations; and all property used in any manner or part to commit or to facilitate the
21  commission of those violations. Such property includes, but is not limited to, the following
22  specific items:

23      (i)      All United States currency funds or other monetary instruments
24  credited to account number XXXX-XXXX7487 in the name of THE COMPLIANCE
25  COMPANY, located at Isle of Man Bank Limited, 2 Athol Street, Douglas, Isle of Man.

26      (ii)      All United States currency funds or other monetary instruments
27  credited to account number XXXX-XXXX2293 in the name of THE COMPLIANCE
28  COMPANY, located at Isle of Man Bank Limited, 2 Athol Street, Douglas, Isle of Man.

(iii)   All United States currency funds or other monetary instruments credited to account number XXXXXX5503 in the name of DATA DESIGN GROUP, INC., located at Wells Fargo Bank, N.A., 480 Washington Boulevard, Marina Del Ray, California 90292.

(iv)   All United States currency funds or other monetary instruments credited to account number XXXX4679 in the name of FAT DOG VENTURES LTD., located at SBM Nedbank International Limited, Level 6, State Bank Tower, 1 Queen Elizabeth II Avenue, Port Louis, Mauritius.

(v)   All United States currency funds or other monetary instruments credited to account number XXXX1511 in the name of HIGHVALE HOLDINGS LIMITED, located at Close Bank (Isle of Man) Limited, Saint Georges Court, Upper Church Street, Douglas, Isle of Man.

(vi)   All United States currency funds or other monetary instruments credited to account number XXXXXX2749 in the name of MARIA SHAFFER [sic], located at Wells Fargo Bank, N.A., 8675 North Scottsdale Road, Scottsdale, Arizona 85253.

b.   A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

5.   Pursuant to 18 U.S.C. § 1467(n), and 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), each defendant shall forfeit substitute property, up to the value of the amount described in paragraphs Two through Four of these Forfeiture Allegations, if, by any act or omission of the defendant, the property described in paragraphs Two through Four, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 18, United States Code, Section 1037(c), Title 18, United

1   States Code, Section 1467, Title 18, United States Code, Section 982(a)(1), and Rule 32.2(a),

2   Federal Rules of Criminal Procedure.

3

4          A TRUE BILL.

5                                                    /S/

6                                          FOREPERSON

7   PAUL K. CHARLTON                         8|25|05
    United States Attorney
8   District of Arizona

9

10  JOHN R. LOPEZ, IV
    Assistant United States Attorney

11

12
    WILLIAM A. HALL, JR.
13  Trial Attorney
    Child Exploitation and Obscenity Section
14  Criminal Division
    United States Department of Justice
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    22