1 **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   United States of America,            )   No. CR05-870-PHX-RGS
                                         )
10              Plaintiff,               )   **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    Jeffrey A. Kilbride and             )
13  James R. Schaffer,                  )
                                         )
14              Defendants.             )
                                         )
15  _____

16

17        Pending before the Court is Defendant Jeffrey A Kilbride's and Defendant James R.

18  Schaffer's Motion to Suppress Amsterdam Computers and Related Information. [Doc. # 55]

                           **Background**
19
20        On August 25, 2005, Defendants Jennifer R. Clason, Jeffrey A. Kilbride and James

21  R. Schaffer were charged by Indictment with Count One, Conspiracy, in violation of 18

22  U.S.C. § 371, and Counts Two and Three, Fraud in Connection with Electronic Mail, in

23  violation of 18 U.S.C. § 1037(a)(3) & (4), the recently-enacted CAN-SPAM Act.[1]

24  Defendants Jeffrey Kilbride and James Schaffer were charged with Counts Four and Five,

25  Importation or Transportation of Obscene Matters, in violation of 18 U.S.C. § 1462, Counts

26  Six and Seven, Transportation of Obscene Matters for Sale or Distribution, in violation of

27

28        [1]  On March 6, 2006, Jennifer Clason pleaded guilty to Counts One, Two and Three of the
    Indictment.  Sentencing is currently set for February 13, 2007.

1   18 U.S.C. § 1465, and Count Eight, Laundering of Monetary Instruments, in violation of 18

2   U.S.C. § 1956(h).  Defendant James Schaffer was further charged with Count Nine, Record

3   Keeping Requirements, in violation of 18 U.S.C. § 2257(f)(3) and (f)(4).

4       The charges stem from Defendants' alleged conduct in sending bulk unsolicited

5   commercial e-mail messages, or "spam" messages, some with embedded pornographic

6   images, over the Internet for personal gain.  Plaintiff alleges that Defendants materially

7   falsified header information in these e-mails, and registered, using information that materially

8   falsified the identity of the actual registrant, two or more domain names in violation of the

9   CAN-SPAM Act.

10   **Motion to Suppress Amsterdam Computers**

11       Defendants Jeffrey Kilbride and James Schaffer move the Court for an order

12   suppressing certain computers that were located in Amsterdam, the Netherlands, and

13   information related thereto, that were seized by the government.  According to the

14   Indictment, Defendants are the owners of Ganymede Marketing, a Mauritian company that

15   operated an internet-based business.  Ganymede enrolled in various adult website affiliate

16   marketing programs.  Under these programs, Ganymede advertised adult websites by sending

17   out bulk email advertisements containing pornographic images that would appear as soon as

18   the recipient opened the e-mail.  If an email recipient subscribed to the advertised website,

19   Ganymede would receive a commission.

20       Andrew Ellifson provided network consulting services to Ganymede until September

21   28, 2004, when the government searched his home.  Ellifson's work for Ganymede included

22   purchasing and installing computers at Telecity, an internet services company in Amsterdam.

23   Ellifson regularly sent invoices to Ganymede under his corporate name, Kobalt Network

24   LLC, requesting payments from the proceeds earned from the transmission of the spam

25   messages. According to Defendants, Ellifson received at least $205,020.00 for services

26   rendered to Ganymede.

27

28

1    The computer equipment at Telecity consisted of several servers, including a Domain Name

2    Service ("DNS") server and two workstations used by Defendants. It is primarily these two

3    workstations and the DNS server that are the subject of Defendants' Motion to Suppress.

4    Citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971), Defendants state that

5    it is well settled that the government cannot direct a private party to search and seize

6    someone else's property that the government itself could not seize without court

7    authorization. They argue that here, the government directed Andrew Ellifson, a cooperating

8    witness, to illegally obtain information and computer workstations from the Netherlands that

9    the government knew belonged to Defendants and not Ellifson and that otherwise were

10   beyond the reach of the prosecution team.

11   Defendants maintain that the first Fourth Amendment violation occurred when

12   Ellifson, at the government's direction, requested that Telecity inventory Defendants'

13   computers at that location and then provided the government with that inventory. According

14   to Defendants, the second violation occurred when Ellifson and the government arranged for

15   delivery from Amsterdam to Phoenix of three computers, i.e., the two workstations and the

16   DNS server.

17   Defendants point to evidence in the record that indicates that the two workstations

18   were the property of Defendants. They state that "the workstations were purchased at

19   Kilbride's direction, invoiced by Ellifson to Ganymede, paid for by Ganymede, and used

20   exclusively by Defendants for Ganymede business from the time they were installed at

21   Telecity until December 14 or 15, 2004 when Ellifson cut connectivity to the workstation

22   while cooperating with the government."

23   With respect to the DNS server seized by the government, Defendants argue that it

24   also belonged to them. Citing the FBI Memoranda of Interview of Andrew Ellifson [Doc.

25   # 55, Exhibit 1 to Declaration of Steven M. Goldsobel], Defendants point to Ellifson's

26   statements to the FBI that Defendants directed him to take extra servers with him on his 2003

27   trip to Amsterdam, that the servers were paid for by Ganymede, and that one of the servers

28   was the DNS server. Defendants argue that, accordingly, there is no question that the DNS

1    server and the two workstations were owned by Ganymede and that the government knew

2    about Ganymede's ownership of them prior to their seizure.

3          Defendants state that notwithstanding the government's obvious understanding of

4    Defendants' ownership of the Amsterdam computers, it directed Ellifson to arrange for

5    Telecity to ship the computers to the United States.  On July 1, 2005, after the computers

6    arrived at a Federal Express facility in Phoenix, Arizona, the government obtained a search

7    warrant to seize the computers and search their contents.  Defendants maintain that because

8    the seizure of the computers with Ellifson's assistance was illegal in the first instance, the

9    later obtained search warrant cannot ameliorate the initial Fourth Amendment violation.

10         Further, Defendants argue that the government illegally used Ellifson to obtain

11   information about Ganymede when it directed Ellifson to provide a computer

12   mapping/breakdown on what the FBI would find on each computer.  In response to this

13   directive, on October 16, 2004, Ellifson e-mailed an employee at Telecity "to find out the

14   names of all the machines that are located inside the Ganymede rack . . . ."  The employee

15   responded with an inventory of the Ganymede rack which Ellifson then provided to the

16   government on February 25, 2005.  Accordingly, Defendants request that said inventory and

17   any information derived therefrom be suppressed along with the two workstations and the

18   DNS server.

19         The government responds that with respect to the evidence obtained from the DNS

20   server and the October 16, 2004 email from Ellifson to Telecity, the suppression motion is

21   moot because the government does not intend to introduce at trial evidence obtained from

22   these sources, and that in any event, said evidence was obtained in full compliance with the

23   Fourth Amendment.

24         The government further argues that the two workstations were not seized until they

25   were taken into custody in the United States.  Citing *United States v. Matlock*, 415 U.S. 164,

26   170 (1974), the government maintains that Ellifson's shipment of the workstations was not

27   an unreasonable private search because he had sole physical access and control over the

28   workstations at the time they were shipped to the United States.  Under *Matlock*, "the consent

of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."  "Common authority" means "joint access and control for most purposes."  *Id*. at 171 n.7.  The government argues that Defendants make legally irrelevant arguments about the "ownership" of the computers when the determinative legal issue is whether Ellifson had joint access and control over the workstations.

The government further maintains that even if Ellifson did not have actual authority to ship the computers, his action would still not violated the Fourth Amendment under the doctrine of apparent authority because the FBI had reasonable grounds to believe that Ellifson had such access and control.

In their Reply, Defendants argue that contrary to the government's assertion, Ellifson was reimbursed in full by Gandymede for his purchase of the Amsterdam computers. Defendants also argues that after Kilbride password-protected one of the workstations (Schaffer did not do so), Ellifson could not remotely access it.   Defendants state that therefore any claim they did not have a possessory, as well as a 100 % ownership, interest in the workstations is without merit.

Defendants also argue that even if Kilbride and Ellifson shared access and control to the computers, Ellifson still could not consent to a search because Kilbride "repeatedly made known to Ellifson, who in turn advised the government, that Kilbride objected to any search of the computers."  Defendants cite *Georgia v. Randolph*, 547 U.S. ___, 126 S. Ct. 1515, 1523 (2006), in which the Supreme Court held that a co-occupant's refusal to consent to a warrantless search prevails over another occupant's consent to search.

Finally, Defendants argue that the apparent authority doctrine is inapplicable because the government could not reasonably believe that Ellifson had authority over the workstations, which would in any event be overridden by Kilbride's objections to the search.

On August 15, 2006, Defendants filed a Supplemental Reply Memorandum [Doc. # 124] stating that on August 14, 2006, the government informed them that it recently learned that the government had paid Andrew Ellifson a total of $3,776.31 to obtain the release of

1   the Amsterdam Computers from Telecity and ship them from Amsterdam to the U.S. via

2   Federal Express.  Defendants argue that these newly-discovered payments are additional

3   evidence of the government's attempt to "have manufactured consent rather than to have

4   sought international assistance from the Netherlands."

5           Defendants further argue that these payments demonstrate that Ellifson did not have

6   access to or control of the Kobalt Networks rack or the Workstations, DNS server and related

7   equipment that was stored in the rack space until the government provided Ellifson with the

8   funds to pay Telecity to release the equipment.  Defendants contend that, similarly, the

9   payment to Federal Express demonstrates that Ellifson did not have the ability to get the

10  computers from Amsterdam to the U.S. without first receiving payment from the government

11  to pay the shipping charges.

12                      **Findings and Conclusions**

13          Having considered the testimony and exhibits presented at the evidentiary hearing

14  conducted  on August 22 and 29, 2006, and the memoranda presented by the parties, the

15  Court now enters its findings, conclusions and decision.

16          With respect to Defendants' motion to suppress evidence concerning  the DNS server

17  and Ellifson's October 16, 2004 e-mail to TeleCity, the government has avowed that it does

18  not intend to introduce any such evidence and accordingly those portions of the Motion to

19  Suppress are denied for mootness.

20          In June of 2003, Ellifson provided the Defendants computer rack space at a facility,

21  TeleCity, in Amsterdam.  In January 2004, the Defendants began routing messages through

22  the Amsterdam network.  The network included two workstations that were purchased,

23  assembled, and installed by Ellifson.  A Mauritius corporation, Ganymede Marketing, was

24  billed by Ellifson for the costs associated with setting up the Amsterdam network.  The

25  Billing did not itemize specific equipment  purchased or labor performed for the network but

26  instead described the cost for the parts and labor as "Internet access setup services" (Gov. Ex.

27  4; Tr.1 91:15 - 95:14; Tr. 2 51:3-22).  Ellifson believed that he owned the subject

28  workstations and DNS server and so advised the investigating agents of the FBI on October

12, 2004 (Motion to Suppress - Declaration of Steven M. Goldsobel Ex 1 - FD-302  Bates 76, 99, 153; Tr.1 110).  Based upon the evidence presented, the Court finds and concludes, without prejudice, that the Defendants have not established that they were the owners of the subject workstations and server.

Aside from the ownership issue, physical access to the subject workstations in Amsterdam was controlled by a TeleCity access list.  Only individuals on the list could have access to the equipment stored in TeleCity's racks (Tr. 1 105).  The Defendants indicated that they did not want to be on the list (Tr. 1 107:4-9).  At no time did either Defendant Kilbride or Defendant Schaffer communicate an objection to the nature or scope of Ellifson's access to the subject workstations or server.  In July, 2005, Ellifson voluntarily arranged for the equipment to be shipped to Phoenix, Arizona.  Based upon the presentations of the parties, the Court finds, by clear and positive evidence, that Ellifson lawfully directed that the subject server and workstations be shipped to Phoenix, Arizona, where the equipment was thereafter subject to a lawfully obtained search warrant.

In view of the foregoing,

IT IS ORDERED denying Defendant Jeffrey A Kilbride's and Defendant James R. Schaffer's Motion to Suppress Amsterdam Computers.  [Doc. # 55]

DATED this 5th day of February, 2007.

_____
Roger G. Strand
Senior United States District Judge