**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 05-870-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Jeffrey A. Kilbride (2), James R. Schaffer (3), | |
| Defendants. | |

The parties have filed a number of motions in limine. This order will address them separately.

1. Defendant Kilbride has filed a Motion in Limine to Exclude Expert Witness Testimony (MIL No. 1). Dkt. #210. The Government has filed a response. Dkt. #227. For the reasons explained below, the motion is **denied**.

Defendant Kilbride asks the Court to exclude the expert testimony of witnesses Perkins, Kaplan, and Fotrell. Defendant argues that Ms. Perkins' testimony regarding the various types of equipment and software used to create and transmit email, the make-up of email (including header information), and tools used by federal agencies to identify the senders of email and how those tools compare to tools available to non-law enforcement persons is irrelevant and prejudicial. Defendant argues that testimony from Messrs. Kaplan and Fotrell will be cumulative to that offered by Ms. Perkins. The Government argues that Ms. Perkins' testimony will be relevant to the jury's understanding of the email issues in this case and whether or not recipients of the email could identify the sender. The Court cannot

determine at this stage whether such testimony will be irrelevant or unfairly prejudicial. That decision must be made during the course of trial. Nor can the Court determine at this stage whether testimony from these witnesses would be cumulative. That, too, must be determined at trial.

Defendant Kilbride also asks the Court to exclude the testimony of Ms. Romery, an employee of AOL. Defendant argues that the Government will attempt to introduce evidence through Ms. Romery of Defendant's attempts to circumvent AOL's spam filters, an issue not relevant to the charges in the Indictment. Defendant Kilbride also argues that her testimony about complaints received by AOL will be irrelevant in light of another motion in limine filed by Defendant Kilbride. Finally, Defendant Kilbride argues that her testimony will be cumulative of that to be offered by Ms. Perkins. The Government responds that AOL itself is a victim, and that AOL's efforts to combat spam are relevant to the loss suffered by victims in this case. As with the testimony of the experts discussed above, the Court cannot determine at this stage that the testimony of Ms. Romery will be irrelevant or unfairly prejudicial. That question must be decided at trial.

Defendant Kilbride next argues that the Court should exclude the testimony of witnesses Gay, Sherman, Hanson, and Kratovil. Defendant Kilbride notes that each of these witnesses has been identified to testify about financial transactions at issue in the Indictment, and that their testimony therefore will be cumulative. The Government avows that it has no intention of presenting cumulative evidence. Until these witnesses testify, the Court cannot determine whether their testimony is cumulative. This issue must be addressed during trial.

Finally, Defendant Kilbride argues that lay witnesses Ellifson, Rogers, and Clason may not present expert testimony under the guise of lay witness testimony. The Government states that it intends to use the expertise of these witnesses, if at all, only to explain their lay testimony to the jury. Whether the testimony to be provided by these witnesses in opinion form is properly admitted under Rule 701 of the Federal Rules of Evidence, and, if not, whether their opinion testimony is properly admitted under Rule 702, are matters that can only be decided at trial.

Because the issues raised in this motion must be decided at trial, the motion will be denied. Defendant Kilbride may object during trial to testimony that he considers inadmissible.

2. Defendant Kilbride has filed a Motion in Limine to Evidence of Reformatting Computers (MIL No. 2). Dkt. #211. The Government has responded. Dkt. #225. The motion will be **denied**.

"An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis." *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980). The fact that Defendant Kilbride was in the process of installing an operating system on one of the computers in his home when the FBI arrived to search his home, and that Defendant Kilbride previously had received a telephone call from Defendant Schaffer advising him that Defendant Schaffer's home had been searched by the FBI that morning, could lead a reasonable jury to conclude that Defendant Kilbride was attempting to destroy evidence and that this attempt reflected a consciousness of his guilt. The Court cannot conclude that the evidence is irrelevant. Nor does the Court conclude that the risk of unfair prejudice substantially outweighs the probative value of this evidence on the issue of Defendant's consciousness of guilt and on the issue of why certain evidence may not have been recovered from his computers. The Court does not conclude that the evidence is admissible (the Government will need to show its relevance and to provide the evidence in admissible form at trial), only that it has not been shown at this point to be inadmissible.

3. Defendant Kilbride has filed a Motion in Limine to Exclude Evidence of Complaints to FTC and AOL and Other AOL Information (MIL No. 3). Dkt. #212. The Government has filed a related motion: Motion in Limine to Admit Exhibits 2, 4. Dkt. #218. Defendant Schaffer addresses the same issue in his Second Motion in Limine. Dkt. #206. Each party has filed a response. Dkt. ##220, 224, 229. For the reasons described below, the Court will **deny** Defendant Kilbride's motion and **grant** the Government's motion in part, conditioned upon the Government laying a proper foundation for the business records exception.

1  The Government seeks to admit approximately 660,000 complaints received by America On-Line ("AOL"). The complaints allegedly were received from AOL customers who received spam email from Defendants and their co-conspirators. The Government also seeks to admit approximately 8,000 complaints received by the Federal Trade Commission ("FTC") regarding spam email sent by Defendants and their co-conspirators. Defendants argue that these complaints are inadmissible hearsay, violate their rights under the Confrontation Clause, are irrelevant, and should be excluded under Federal Rule of Evidence 403. The Court will address these arguments in turn.

      a.  Business records.

Rule 803(6) provides for the admission of records made at or near the time of the event in question, by or from information transmitted by a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the record. Each of these elements must be shown by the testimony of the custodian of the record or other qualified witness, and the record may not be admitted if the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

The Government states that it will present testimony of custodians or other qualified witnesses that the complaints in issue were received by AOL and the FTC at or about the time of the spam emails allegedly sent by Defendants, that the complaints were kept in the course of AOL's and the FTC's regularly conducted business activity, and that it was the regular practice of AOL and the FTC to maintain the complaints as records. Assuming the Government can lay this foundation through qualified witnesses, only one requirement is lacking – that the record were created by or from information transmitted by a person with knowledge.

"The phrase 'person with knowledge' is liberally construed." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 803.08[5] (2007). As the Ninth Circuit has noted "[s]everal circuits have held that exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other

requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy." *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993) (citing cases). The Ninth Circuit in *Childs* affirmed the admission of records kept in the ordinary course of business by auto dealerships, even though the records (certificates of title, purchase orders and odometer statements) had been created by persons or entities outside the dealerships. *Id.* The Court of Appeals noted that these documents were collected and retained in the ordinary course of the dealerships' business and were relied on by the dealerships, and held that the trial court did not err in admitting the records under Rule 803(6).[1]

The records at issue here consist of three components – (1) notations made by AOL and the FTC when the complaints were received, (2) copies of the emails allegedly sent by Defendants or their co-conspirators to the complaining recipients, and (3) in a small number of the complaints, specific comments by the complaining email recipients. Rule 805 requires the Court to address these components separately.

Assuming the Government's witnesses will testify that notations made by AOL and the FTC were added at or about the time of the events in question, through a person or process designated to reflect receipt of the complaints and record information about them accurately, and that the other requirements of the business records exception are satisfied, component (1) will be admissible under Rule 803(b). Notations made on the complaints in the ordinary course of business at AOL and the FTC will be admissible as business records.

Component (2) – the copies of emails created by Defendants, sent to the complaining recipients, and forwarded by those recipients to AOL and the FTC – will be admissible on two grounds. First, they appear to be statements of Defendants and their co-conspirators within the meaning of Rule 801(d)(2)(A) and (E) and therefore are not barred by the hearsay

---

[1] The parties do not address *Childs*, instead focusing their discussion on *United States v. Lange*, 662 F.2d 1021 (9th Cir. 1972). *Lange* also supports the Court's decision in this order, holding that complaints about pornographic material received by the Postal Service were admissible as business records. But because *Lange* was decided before adoption of the Federal Rules of Evidence, the Court considers it less authoritative than *Childs*, which specifically addresses the requirements of Rule 803(6).

- 5 -

1  rule, assuming the elements of Rule 802(d) can be satisfied by the Government's evidence.
2  Second, they are admissible as records received and relied upon by AOL and the FTC within
3  the meaning of *Childs*. The objected-to emails are received – even invited – by AOL and the
4  FTC as part of their complaint process, are retained in the ordinary course of business by
5  these entities, and are relied on by these entities in acting to address unwarranted spam email.
6  The Court finds that these copies of Defendants' emails are akin to the various records
7  regularly collected, retained, and relied upon by the auto dealerships in *Childs*. Moreover,
8  given that the emails can be linked to Defendants through specific identifying information
9  and the testimony of co-conspirators, the Court finds that they are sufficiently reliable for
10 admission under *Childs*.

11 The Court is less certain about component (3) – language added to the complaints by
12 the complaining email recipients. The complaining parties are not persons employed by
13 AOL or the FTC, and they did not make their statements pursuant to a duty imposed on them
14 through the business practices of those entities. Nor are they parties to this litigation whose
15 statements are admissible under Rule 802(b). The Government argues that the statements
16 are admissible under Rule 803(3) as reflecting the complaining parties' mental states, but the
17 Court cannot make this determination without reviewing the individual statements
18 themselves. The parties will need to address at trial whether statements by individual
19 complaining parties are admissible under the hearsay rules. For this reason, the Court will
20 grant the Government's motion with respect to components (1) and (2) of the AOL and FTC
21 complaints, but not with respect to component (3). As discussed more fully below,
22 components (1) and (2) will be admitted for purposes of demonstrating the volume of
23 Defendants' spam email activities.

24         b.     Confrontation Clause.

25 Defendants argue that admission of the AOL and FTC complaints will violate their
26 rights under the Confrontation Clause. Under *Crawford v. Washington*, 541 U.S. 36 (2004),
27 the records will violate such rights only if they are "testimonial." The complaints are not
28 testimonial. They are not in-court testimony or its functional equivalent, such as affidavits,

- 6 -

1  depositions, prior testimony, or confessions. *Id.* at 52-53. Business records are not
2  testimonial. *See id.* at 56 (business records are not testimonial); *United States v. Hagege*, 437
3  F.3d 943, 958 (9th Cir. 2006) ("business records fall outside the core class of 'testimonial
4  evidence,' and thus are not subject to the absolute requirement of confrontation established
5  in *Crawford*").

6       c.   Relevancy.

7  Defendant Kilbride argues that the complaints are not relevant because they do not
8  demonstrate that header or registration information contained in the emails are false. But this
9  is not the only possible relevancy of the records. To prove its claim under the CAN-SPAM
10 Act, the Government must show that Defendants sent multiple emails. The complaints
11 received by AOL and the FTC will provide some evidence of the volume of Defendants'
12 activities. The complaints may also constitute relevant corroboration for the testimony of
13 Defendants' co-conspirators who will describe the nature of Defendant's alleged conspiracy,
14 the scope and volume of the emails they sent, and the fact that the emails were sent from
15 Kobalt Networks, LLC, a company owned and operated by Defendant's alleged co-
16 conspirator Andrew Ellifson. Moreover, the volume of emails will be directly relevant to the
17 Government's allegation in Count One that Defendants engaged in a wide-spread conspiracy
18 for substantial financial gain.

19      d.   Rule 403.

20 Defendants argue that the sheer volume of these complaints (some 30 boxes of
21 documents) will be prejudicial. The question under Rule 403, however, is whether the
22 probative value of the evidence will be substantially outweighed by the risk of "unfair
23 prejudice." As noted above, the substantial scope of Defendants' email activities is relevant
24 not only to the CAN-SPAM Act violations, but also to the conspiracy charged in Count One,
25 the money laundering conspiracy charged in Count Eight, and the credibility of Defendants'
26 co-conspirators. Visually illustrating that substantial scope through 30 boxes of documents
27 will not be unfairly prejudicial.

28

1                    e.     Exhibit 609, 610, and 611.

2       Defendant asks the Court to exclude several exhibits that purport to summarize
3  complaints from AOL customers located in Arizona and AOL customers who had activated
4  parental controls.  The Government does not respond to this argument.  Before seeking to
5  place Exhibits 609, 610, and 611 in evidence, and before mentioning these exhibits before
6  the jury, counsel for the Government must demonstrate to the Court why these exhibits are
7  relevant and why they would not be prejudicial.  The Government should not mention these
8  exhibits in front of the jury before doing so.

9       4.     Defendant Kilbride has filed a Motion in Limine to Exclude Testimony or
10 Argument that Non-Header Information Could Constitute a Violation of Federal Law (MIL
11 No. 4).  Dkt. #213.  The Government opposes the motion.  Dkt. #230.  The Court will **deny**
12 the motion.

13      Defendant Kilbride's argument is premised on the statutory definition of "header
14 information."  Counts Two and Three of the Indictment accuse Defendant of violating the
15 CAN-SPAM Act by knowingly sending multiple commercial emails with materially false
16 header information and materially false registration information.  Defendant Kilbride notes
17 that "header information" is defined by statute as "the source, destination, and routing
18 information attached to an electronic mail message, including the originating domain name
19 and originating electronic mail address, and any other information that appears in the line
20 identifying, or purporting to identify, a person initiating the message."  15 U.S.C. § 7702(8).
21 Because information contained in the "subject" line of the emails and in the body of the
22 emails does not constitute header information within this definition, Defendant Kilbride
23 argues that evidence of such information is irrelevant and would be prejudicial and a waste
24 of time under Rule 403.  As the Government's response notes, however, evidence concerning
25 the subject line and text of the emails is relevant to other portions of the Indictment.

26      Count One charges Defendants with engaging in a conspiracy in violation of 18
27 U.S.C. § 371.  Count One specifically alleges that the conspiracy operated, in part, "by
28 including 'Subject:' lines in the spam messages [that] were deliberately inoffensive in nature.

This caused unwitting Internet users to open these messages, which appeared to be non-pornographic until opened, and be exposed to undesired pornographic images." Dkt. #1 ¶ 9. Evidence concerning the content of "subject" lines in Defendants' emails is directly relevant to these allegations of the Indictment.

Count One further alleges that Defendants "earned commissions for directing Internet traffic to the pornographic World Wide Web sites advertised in the spam messages," that Defendants "were paid based on the number of persons who visited and/or purchased access to the sites as a result of the spam messages," and that "the more spam messages sent, the greater the potential for defendants . . . to profit from them." *Id.* ¶ 10. To the extent the emails' subject lines were deliberately innocuous and the emails therefore were more likely to be opened, evidence concerning the subject lines is relevant to the Government's allegation that Defendants intended unwitting recipients to open the emails, be exposed to the pornographic websites, and therefore be inclined to access the pornographic websites and generate commissions for Defendants. Evidence concerning the text contained in the body of the emails is similarly relevant because it tends to demonstrate that Defendants sought to elude spam filters, cause email recipients to open their emails and be exposed to pornographic websites, and thereby increase the likelihood that Defendants would earn commissions through their conspiracy.

Count Eight alleges that Defendants conspired to commit money laundering offenses by laundering money they earned from sending spam emails and distributing obscene images. Dkt. #1, Count Eight, ¶ 2(a)-(d). To prove these allegations, the Government contends, it must show that Defendants knew the money they laundered represented proceeds of criminal activity. *See* 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(2)(B)(i). To the extent evidence from the subject line and text of the emails suggests that Defendants intentionally engaged in deceptive conduct – that they were not simply running a legitimate marketing program – the evidence will tend to support the Government's allegation that Defendants knew they were engaged in criminal activities and that commissions generated by the emails represented proceeds of criminal activity.

1    For these reasons, the Court cannot accept Defendant's assertion that the evidence in question is irrelevant.  Although it is true that "header information" is specifically defined for purposes of Count Two and Count Three, the evidence is relevant to other portions of the Indictment.  Defendants are free to suggest jury instructions to make clear that they may be convicted of Counts Two and Three only if the jury finds that header information was falsified. Such instructions will ensure that Defendants are not unfairly prejudiced on Counts Two and Three by the evidence introduced with respect to other counts.

The Court also concludes that the subject line and text evidence does not present a risk of unfair prejudice that outweighs its probative value.  The evidence will tend to prove specific allegations and charges in the Indictment, as explained above.  The fact that the evidence may be prejudicial to Defendants on the question of their guilt or innocence with respect to these charges does not render the evidence unfairly prejudicial within the meaning of Rule 403.  Nor does the Court conclude that this evidence will confuse the jury or unnecessarily waste time within the meaning of Rule 403.

Finally, the Court concludes that evidence in the subject line and text of the emails is important for the jury to understand the complete picture of Defendants' allegedly criminal activities.  Parsing the emails and excluding portions of them, as Defendant Kilbride requests, will unnecessarily impair the jury's ability to understand and assess Defendants' conduct and to decide the charges against them.  The Ninth Circuit has explained that "'[a] jury is entitled to know the circumstances and background of a criminal charge.  It cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'" *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)).

5.    Defendant Kilbride has filed a Motion in Limine to Exclude Evidence of Alleged Purchase of Email Lists (MIL No. 5). Dkt. #214.  The Government opposes the motion. Dkt. #228.  The Court will **deny** the motion, but will instruct the Government not to mention this evidence during trial without first raising the issue with the Court.

- 10 -

The Government intends to introduce evidence that Defendants purchased stolen email lists. Defendant Kilbride notes that the alleged purchases occurred sometime before the commencement of the conspiracy in this case (up to one year beforehand) and argues that the alleged purchase of stolen email lists is not relevant and would be unfairly prejudicial to Defendants. The Government argues that the evidence is relevant in several respects.

First, the Government contends that the evidence is necessary to show that Defendants obtained access to millions of email addresses. This fact can be shown, however, without evidence that the email addresses were stolen. The fact that the addresses were stolen is not relevant to the question of how many addresses were acquired.

The Government further contends that evidence of stolen address lists will demonstrate the Defendants' reckless disregard with respect to who received the spam emails. The Government does not contend, however, that such reckless disregard is an element of any charge in the Indictment.

The Government further contends that evidence of the purchase of stolen email lists will support Defendants' motive for falsifying header and registration information. It is not clear at this point, however, that such motive evidence will be necessary. The Government presumably will seek to prove directly that the information was false and that Defendants knew it was false. The Court cannot conclude at this stage that evidence of motive is sufficiently important to warrant admission of testimony that the email lists had been stolen.

The Government contends that purchases of stolen email lists will show that Defendants were trying to avoid being caught – they knew the sellers of such lists would be unlikely to turn them in. Violation of the CAN-SPAM Act, however, requires the Government to show that the false header and registration information would impair the ability of recipients to identify senders. It does not require the Government to show that Defendants took other steps to avoid being caught.

Finally, the Government contends that this evidence will negate Defendants' anticipated assertion that recipients of their emails had consented to receiving pornographic material. At this stage, it is not clear that Defendants will make such an assertion.

- 11 -

1    In sum, the Court cannot determine the relevancy of this evidence now. The Court
2 will be better able to assess such relevancy during trial. Because the Court cannot presently
3 assess the relevancy of the evidence, it cannot determine whether the risk of any unfair
4 prejudice substantially outweighs that relevancy. As a result, the Court will not grant
5 Defendant Kilbride's motion in limine. Because the evidence is potentially quite prejudicial,
6 however, the Government is directed not to mention it without first raising the issue with the
7 Court.

8    6.    Defendant Kilbride has filed a Motion in Limine to Exclude Evidence of
9 Pornographic Images Not Alleged in Indictment (MIL No. 6). Dkt. #215. The Government
10 has filed a response. Dkt. #226. For the reasons explained below, the Court will **deny** the
11 motion.

12    Defendant Kilbride contends that there is no reason to show the jury pornographic
13 images contained in emails sent by Defendants to email recipients. Defendant concedes that
14 the emails themselves may be relevant, but suggests that the pornographic images will have
15 "no bearing" on any count in the Indictment. Defendant Kilbride also argues that admission
16 of the images will be unfairly prejudicial.

17    Count One of the Indictment charges Defendants with conspiracy to violate the CAN-
18 SPAM Act. Dkt. #1. The purpose of the alleged conspiracy is described in the Indictment
19 as follows: "To engage in the business of sending bulk unsolicited commercial electronic
20 mail messages, commonly known as 'spam messages,' with some embedded pornographic
21 images over the Internet for the personal gain, benefit, profit and advantage of the
22 defendants[.]" *Id*. ¶ 2.  Count One alleges that Defendants "advertised pornographic
23 commercial World Wide Web sites on the Internet by embedding pornographic images in
24 these spam messages. Many of the 'Subject:' lines in the spam messages were deliberately
25 inoffensive in nature. This caused unwitting Internet users to open these messages, which
26 appeared to be non-pornographic until opened, and be exposed to undesired pornographic
27 images. The embedded pornographic images appeared immediately when the message was
28 opened by the recipient. The Internet user did not have to click a button or other element

within the message to reveal the images." *Id.* ¶ 9. Count One further alleges that Defendants "earned commissions for directing Internet traffic to the pornographic World Wide Web sites advertised in the spam messages" and that these commissions "were paid based on the number of persons who visited and/or purchased access to the sites as a result of the spam messages." *Id.* ¶ 10. Count One additionally alleges that Defendants "transmitted over 600,000 spam messages advertising pornographic commercial World Wide Web sites that operated affiliate programs and containing pornographic images." *Id.* ¶ 12(a).

The Government states in its response that it was able to capture only 12 pornographic images sent by Defendants that are not charged as obscene in Counts Four through Seven. Dkt. #226 at 2 n.1. The Government asserts that admission of these images is necessary to prove the allegations contained in Count One, as set forth above.

The Court concludes that the images are directly relevant to the allegations of Count One. The Government has set forth the nature of the alleged conspiracy in Count One and is entitled to present evidence to prove its allegations. The presence of embedded pornographic images in emails sent by Defendants is central to the Government's alleged conspiracy – a conspiracy specifically designed to expose large numbers of email recipients to pornographic images and thereby entice them to visit the advertised pornographic web sites and generate commissions for Defendants. Although the Court has no desire to expose the jury or court staff to pornography unnecessarily, it is clear that the pornographic images Defendants embedded in their emails are directly relevant to proving the Government's Count One conspiracy allegations.

Moreover, the images included in Defendants' emails are important for the jury to understand the complete picture of Defendants' alleged criminal activities. Admitting the emails into evidence without the embedded images that were the primary purpose of the emails would unnecessarily impair the jury's ability to understand and assess Defendants' conduct. As noted above, "[a] jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void – without knowledge

of the . . . circumstances of the acts which form the basis of the charge." *Daly*, 974 F.2d at 1217.

Defendant Kilbride also argues that the images should be excluded under Rule 403. The Court disagrees. These are not images sent by other individuals, nor images from some other email enterprise. These are the very images Defendants chose to send into the homes of their recipients. They are highly relevant to the charges in Count One. That relevancy is not substantially outweighed by the risk of "unfair" prejudice as required by Rule 403.

7. Defendant James Schaffer has filed a First Motion in Limine. Dkt. #205. The Government has filed a response. Dkt. #223. For the reasons set forth below, Defendant Schaffer's motion will be **denied**.

a. Deliberate ignorance instruction.

Defendant argues that the Court should not instruct the jury on the issue of deliberate ignorance. The Government states that it is not seeking a deliberate ignorance jury instruction, but reserves its right to do so at the end of the case. This is an issue that need not be resolved now.

b. Witness opinions regarding intent or knowledge.

Defendant asks the Court to preclude several lay witnesses, including witnesses Ellifson, Rogers, Clason, and Compston, from opining about the knowledge or intent of Defendant. Rule 704(b) prohibits an expert witness from opining about the mental state of a criminal defendant, reserving such ultimate issue for the trier of fact, but does not apply to lay witnesses. Lay opinion testimony is not inadmissible solely because it addresses the ultimate issue in the case. *Weinstein's* § 701.05; *see also United States v. Rea*, 958 F.2d 1206, 1214-16 (2d Cir. 1992). Although there is no theoretical prohibition to a lay witness testifying as to another person's knowledge or intent, such testimony often will not be "helpful" as required of lay opinion testimony under Rule 701. *Rea*, 958 F.2d at 1216-17.

Whether the witnesses in question can satisfy the requirements of Rule 701 for providing lay opinion testimony, and whether opinions about Defendants' knowledge or intent would be helpful to the jury within the meaning of Rule 701, are matters that can be

addressed only at trial. The Court will **deny** Defendant's motion without prejudice to Defendant objecting to such opinions during the course of the trial.

    c. Guilt-assuming hypotheticals.

Defendant Schaffer objects to the Government using guilt-assuming hypothetical questions during trial. The Government states that it has no intention of asking such improper questions. *See United States v. Shwayder*, 312 F.3d 1109, 1120-21 (9th Cir. 2002). The issue therefore is moot.

    d. Extraneous acts.

Defendant Schaffer asks the Court to exclude a variety of evidence he construes as "extraneous acts," including pornographic images other than the two alleged in Counts Two through Seven of the Indictment, any alleged investigation of Ganymede by authorities in Mauritius, and complaints received by AOL and the FTC from email recipients.

As explained above, the Court concludes that pornographic images embedded in Defendants' emails are relevant and not precluded under Rule 403. Moreover, because the Government alleges that these emails were sent by Defendants or as part of their conspiracy, the Court does not consider them to be extraneous acts. They are among the very acts at issue in Court One of the Indictment.

The Government argues that the investigation of Ganymede is relevant to explain why Defendants made various money transfers, and that communications occurring during the investigation will help demonstrate Defendant's knowledge of the illegality of their actions. The Government further asserts that the investigation by authorities in Mauritius is essential to understanding the complex financial evidence that will be presented in support of Count Eight and its charge of a money laundering conspiracy. The Court cannot determine the relevancy of this evidence now. This is an issue that will need to be addressed during the course of trial. If evidence concerning the investigation is admitted, the Court will entertain proposed jury instructions from Defendants to make clear that any investigation by foreign authorities might be relevant to understanding events at issue in this case, but is not evidence of Defendants' guilt on the charges in the Indictment.

1   For the reasons explained above, the Court will not grant Defendant's request to
2   exclude the complaints to AOL and the FTC.

3          e.      Expert testimony.

4   Defendant seeks to exclude the expert testimony of Ralph Gay and Mark Sherman,
5   arguing that these experts cannot satisfy the requirements of Rule 702. Defendant also
6   argues that the experts may well rely on testimonial hearsay from others in violation of
7   Defendant's Sixth Amendment rights under *Crawford*. Whether these experts can satisfy the
8   requirements of Rule 702 is an issue that must be decided during trial. Moreover, whether
9   these experts will seek to rely on testimonial hearsay is a matter of speculation at this stage.
10  If Defendants believe that the experts are being asked to provide testimony in violation of
11  their *Crawford* rights, they may object at the time of the testimony.

12         f.      Financial issues.

13  Defendant Schaffer seeks to preclude the Government from offering evidence of
14  Defendant's financial situation, civil lawsuits, or whether any pecuniary losses were suffered.
15  The Government responds by asserting that Defendant Schaffer's current wealth is a direct
16  result of his illegal activity and therefore highly relevant to the indicted offenses. This
17  motion and response do not make clear what evidence is being disputed and the motion
18  therefore will be denied. If the Government is suggesting that it may prove a fact at issue in
19  this case by introducing evidence that Defendant Schaffer is wealthy, the Court has serious
20  doubts. The Government should make no mention of Defendant Schaffer's financial status
21  without first raising the issue with the Court outside the hearing of the jury.

22  8.     Defendant Schaffer has filed a Second Motion in Limine. Dkt. #206. The
23  Government has responded. Dkt. #224. The motion will be **denied**.

24  Defendant Schaffer objects to the admission of a large number of exhibits under
25  Rule 803(6). Defendant Schaffer does not address any document specifically, but instead
26  recites various principles of law concerning the business records exception and asserts that
27  some unspecified Government exhibits will fail to satisfy these principles. The Government

28

1  states in response that it is fully aware of the requirements of Rule 803(6) and that it is
2  otherwise unable to respond to Defendant's very general arguments.

3  The Court agrees. Defendant's motion does not address any specific document or the
4  foundation to be laid for that document. Hearsay objections to the Government's exhibits
5  will be addressed at trial.

6  Defendant Schaffer does argue that complaints to AOL and the FTC are not
7  admissible under Rule 803(6). That argument is addressed above.

8  9.   The Government has filed a Motion in Limine to Admit Exhibits 11-39 and
9  383-391 as authenticated business records. Dkt. #216. Defendants have responded.
10 Dkt. ##219, 231. For the reasons set forth below, the Government's motion will be **granted**
11 **in part and denied in part**.

12 The Government seeks to admit in evidence a number of business records based on
13 certifications provided under Rule 902(11), Rule 902(12), and 18 U.S.C. § 3505. These
14 exhibits consist of bank and credit card transaction records, Internet Service Provider records,
15 domain name registration records, affiliate program records, and others. Dkt. #216 at 2. The
16 Government acknowledges that it must establish the relevancy of these records before they
17 will be admitted in evidence at trial, but asks the Court to conclude that Rule 803(6) has been
18 satisfied by the written certifications accompanying the records and to rule that the records
19 will be admissible in evidence once relevancy is established.

20 Defendant Schaffer opposes the Government's motion on two grounds. First, he
21 argues that the motion was untimely and should be stricken. The Court's records reflect that
22 the motion was filed at 0:15 a.m. on May 26, 2007, 15 minutes after the Court's deadline.
23 Dkt. #216. Although the filing was late, the Court concludes that a 15-minute delay in filing
24 the motion is not a ground for striking it.

25 Defendant Schaffer next argues that the foreign business records cannot be admitted
26 under 18 U.S.C. § 3505(b) because the Government did not provide notice of its intent to use
27 the records "[a]t the arraignment or as soon after the arraignment as practicable" as required
28 by 18 U.S.C. § 3505(b). Defendant Schaffer asserts that he has been prejudiced by this lack

1  of notice, having premised his defense on the assumption that the Government would not use
2  foreign business records at trial. Defendant Kilbride joins in Defendant Schaffer's
3  arguments. Dkt. #219.

4  The Government's motion does not address the notice requirements of § 3505(b).
5  This is an issue that must be addressed at the final pretrial conference to be held on
6  June 1, 2007. The Government should be prepared to explain why the notice requirements
7  of the statute have been satisfied with respect to the foreign business records.

8  Defendant Kilbride opposes the Government's motion on the ground that it cites
9  testimony given by Mr. Kilbride at the suppression hearing in this case. Defendant Kilbride
10 notes that testimony given during a suppression hearing is admissible at trial only for
11 impeachment. *See United States v. Beltran-Guiterrez*, 19 F.3d 1287, 1291 (9th Cir. 1994).
12 *Beltran-Guiterrez* stated that testimony from a suppression hearing is not admissible at trial
13 to prove guilt, but did not address whether such testimony can be used for explanatory
14 purposes in a pretrial motion.

15 The Government's motion quoted testimony from the suppression hearing in
16 explaining the relevancy of financial documents obtained from foreign banks. Thus,
17 Defendant Kilbride's objection goes to the same foreign records about which Defendant
18 Schaffer has made a timing objection. The Government should be prepared at the final
19 pretrial conference to address Defendant Kilbride's objection and to explain how it will
20 establish the relevancy of the documents during trial without relying on Defendant Kilbride's
21 suppression hearing testimony.

22 Because Defendants have asserted objections only with respect to the foreign
23 documents proffered by the Government, and have not otherwise disputed the Government's
24 assertion that Rule 803(6) is satisfied by the written certifications attached to the various
25 documents, the Court will **grant** the Government's motion with respect to all non-foreign
26 documents at issue in the motion. As suggested by the Government, this grant is conditional.
27 The documents will be received into evidence only if the Government establishes their
28

1 relevancy. As noted above, the Court will address the foreign documents with the parties at
2 trial.
3     10. The Government has filed a Motion in Limine to Preclude Evidence of So-
4 Called "Comparables." Dkt. #217. Defendant Schaffer has filed a response. Dkt. #222.
5 This motion will be addressed by the Court at the final pretrial conference.

6 **IT IS ORDERED:**

7     1. Defendant Kilbride's Motion in Limine to Exclude Expert Witness Testimony
8     (MIL No. 1), Dkt. #210 is **denied**.
9     2. Defendant Kilbride's Motion in Limine to Evidence of Reformatting
10     Computers (MIL No. 2), Dkt. #211 is **denied.**
11     3. Defendant Kilbride's Motion in Limine to Exclude Evidence of Complaints to
12     FTC and AOL and Other AOL Information (MIL No. 3), Dkt. #212, is **denied**.
13     4. The Government's Motion in Limine to Admit Exhibits 2, 4, Dkt. #218, is
14     **granted in part**, conditioned upon the Government laying a proper foundation
15     for the business records.
16     5. Defendant Kilbride's Motion in Limine to Exclude Testimony or Argument
17     that Non-Header Information Could Constitute a Violation of Federal Law
18     (MIL No. 4), Dkt. #213, is **denied**.
19     6. Defendant Kilbride's Motion in Limine to Exclude Evidence of Alleged
20     Purchase of Email Lists (MIL No. 5), Dkt. #214 is **denied**.
21     7. Defendant Kilbride's Motion in Limine to Exclude Evidence of Pornographic
22     Images Not Alleged in Indictment (MIL No. 6), Dkt. #215, is **denied**.
23     8. Defendant Schaffer's First Motion in Limine, Dkt. #205, is **denied**.
24     9. Defendant Schaffer's Second Motion in Limine, Dkt. #206 is **denied**.
25     10. The Government's Motion in Limine to Admit Exhibits 11-39 and 383-391 as
26     authenticated business records, Dkt. #216 is **granted in part and denied in**
27     **part**.
28

11. The Government's Motion in Limine to Preclude Evidence of So-Called "Comparables," Dkt. #217, is **taken under advisement** and will be addressed by the Court at the final pretrial conference.

DATED this 1st day of June, 2007.

_____
David G. Campbell
United States District Judge