**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 05-870-PHX-DGC |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jeffrey A. Kilbride (2), James R. Schaffer (3), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Jeffrey Kilbride has filed objections to the draft presentence report ("PSR"). Dkt. #338. The Government has filed a response. Dkt. #343. The Government has also filed its own objections to the PSRs for Defendants Kilbride and Schaffer. Dkt. #341. The Court will address the objections raised by the parties.

**I.      Defendant's Objection No. 1 – Counts of Conviction.**

Defendant Kilbride argues that the PSR, in making its guideline calculation, assumes that Defendants were convicted of felonies on Counts One through Three of the Indictment. Defendant Kilbride argues that these convictions are in fact misdemeanors, noting that 18 U.S.C. § 1037(b)(3) prescribes a period of "imprisonment for not more than one year" in the absence of factual findings that were not made by the jury in this case. Defendant argues that treating Counts One through Three as permitting sentences longer than one year would violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the jury in this case did not make the factual determinations beyond a reasonable doubt that would permit increasing the maximum sentences for these counts.

1    The Government addresses this issue in its response to Defendant Kilbride's

2    objections (Dkt. #343) and in its own objections to the PSR (Dkt. #341). The Government

3    seems to make somewhat inconsistent arguments.

4    In its response to Defendant Kilbride's objections, the Government asserts that the

5    Court need not reach Defendants' *Apprendi* argument. If the statutory maximum sentences

6    for Counts One through Three are one year each, the Government asserts, the total maximum

7    statutory sentence for all counts on which Defendants were found guilty would be 43 years.

8    This figure is arrived at by adding the following statutory maximums: 20 years for Count

9    Eight, five years for each of Counts Four through Seven, and one year for each of Counts

10   One through Three. Because this total statutory maximum is higher than any sentence that

11   will be imposed in this case, the Government contends that the sentence will not violate

12   *Apprendi.* The Court agrees with this argument if the sentences to be imposed on Counts

13   One through Three do not exceed one year each. In that event, the Court will not be making

14   factual determinations that increase the statutory maximum for these individual counts.

15   Somewhat inconsistently, the Government argues in its own objection to the PSR that

16   the Court should apply a five-year statutory maximum to Counts One through Three. The

17   Government notes that a five-year penalty applies if the CAN-SPAM Act offense "is

18   committed in furtherance of any felony under the laws of the United States or any State."

19   18 U.S.C. § 1037(b)(1)(A). The Government argues that the CAN-SPAM violations in this

20   case were committed in furtherance of the obscenity felonies on which Defendants were also

21   convicted. The Government notes that the same emails that violated the CAN-SPAM Act

22   also violated the obscenity statutes. Because the jury found Defendants guilty of both the

23   CAN-SPAM and obscenity counts, the Government argues, *Apprendi* would not be violated

24   by applying the five-year sentence under 18 U.S.C. § 1037(b)(1)(A).

25   The Court cannot agree with this argument. The five year penalty is applicable only

26   if the CAN-SPAM violation is committed "in furtherance" of other felonies, in this case in

27   furtherance of the obscenity felonies. Although it is virtually certain the jury would have

28   found this fact if asked, the jury was not asked. Under *Apprendi*, only the jury can make

1  factual determinations that increase the statutory maximum penalty available for the offense.
2  530 U.S. at 490; *see United States v. Booker*, 543 U.S. 220, 244 (2005).  The jury did not do
3  so in this case.

4      The Court thus reaches the following conclusions.  First, *Apprendi* will not be
5  violated.  The Court will not impose sentences on Counts One through Three in excess of the
6  one-year penalty provided by 18 U.S.C. § 1037(b)(3).  Second, because the jury did not find
7  the specific fact necessary to invoke a five-year penalty under the statute, the Court cannot
8  do so under *Apprendi*.[1]

9  **II.    Defendant's Objection No. 2 – Offense Conduct.**

10      Defendant raises several objections concerning the PSR's description of the offense
11  conduct.  The Court is fully familiar with the facts in this case and the PSR's description will
12  not affect sentencing.  The Court therefore need not resolve Defendants' objections.  Fed. R.
13  Crim. P. 32(i)(3)(B).

14  **III.    Defendant's Objection No. 3 – Victim Impact.**

15      Defendant objects to the PSR's conclusion that there are thousands of potential
16  victims in this case, warranting a six-level enhancement under § 2B1.1(b)(2)(C).  As noted
17  in Section VII below, the final PSR has adopted the position of Defendant, which was agreed
18  to by the Government, that a two-level enhancement for "mass marketing" is appropriate.

19  **IV.    Defendant's Objection No. 4 – Obstruction of Justice.**

20      Defendant Kilbride objects to the PSR's two-level enhancement for obstruction of
21  justice.  The PSR finds the enhancement appropriate on the basis of Defendant Kilbride's
22  alleged destruction of documents and computer files on the day his home was searched.  The
23  Court agrees that an obstruction of justice enhancement is not warranted on this basis.

24      The Government presented no evidence that Defendant Kilbride destroyed documents.
25  Although the Government presented evidence that Defendant was installing a Red Hat
26
27  ─────────────────────
28      [1]The Court notes that this ruling will not alter the ultimate sentence to be imposed in
    this case.  The Guidelines instruct the Court to run sentences on various counts consecutively
    as needed to reach the total punishment prescribed by the Guidelines.  *See* § 5G1.2(d).

1    operating system on an old computer when the FBI agents arrived to search his house, the

2    Court did not find this evidence to be a persuasive ground for concluding that Defendant was

3    destroying evidence.  The computer on which the operating system was being installed was

4    old, was located in a room other than where Defendant Kilbride had his primary business

5    operation, and was not the only old computer on which a Ret Had system had been installed.

6    Moreover, if Defendant Kilbride was intent on destroying computer evidence, he likely

7    would have started with the laptop computer that was located in his house when agents

8    arrived.  Having considered the evidence presented at trial by all parties, including the

9    testimony of Defendant's expert, Tami Loehrs, the Court cannot conclude by a

10   preponderance of the evidence that Defendant Kilbride sought to destroy evidence by

11   installation of the operating system.

12          The Court does conclude, however, that an obstruction of justice enhancement is

13   warranted for Defendant Kilbride's attempted interference with the testimony of Laval Law.

14   Mr. Law traveled to the United States from the country of Mauritius to testify for the

15   Government.  Shortly before his testimony, Defendant Kilbride filed an action in the courts

16   of Mauritius and obtained an order prohibiting Mr. Law from testifying on subjects at issue

17   in this case.  On the basis of this order, Mr. Law declined to testify.  Mr. Law expressed fear

18   that, upon returning home, he would be held in contempt of the Mauritius court if he testified

19   in Defendant's trial.  Only after Defendant Kilbride was confronted by this Court did he take

20   steps to withdraw his Mauritius action and eliminate the order of the Mauritius court.

21   Defendant Kilbride argued at the time that he did not intend the order of the Mauritius court

22   to be so broad, but this explanation was not credible.  Defendant Kilbride hired a lawyer and

23   authorized him to take steps in the courts of Mauritius only days before Mr. Law's testimony,

24   steps plainly designed to limit or prevent that testimony.  The Court views Defendant

25   Kilbride's action as a clear and deliberate attempt to prevent Mr. Law from testifying.

26          Guideline § 3C1.1 applies when a defendant willfully obstructs or impedes, or

27   attempts to obstruct or impede, the administration of justice during the course of a

28   prosecution.  This includes "threatening [or] intimidating . . . [a] witness, . . . or attempting

to do so." § 3C1.1, App. Note 4(a).  Defendant Kilbride attempted to threaten or intimidate Mr. Law with an order from the Mauritius court.  Defendant's objection is overruled.

**V.   Defendant's Objection No. 5 – Applicable Guideline Manual.**

The PSR uses the current Guidelines Manual.  Defendant Kilbride argues that the Court should use the manual effective November 1, 2003.  The Government argues that the Court should use the manual effective November 1, 2004.

Guideline § 1B1.11 states that the Court should use the Guidelines Manual in effect on the date of sentencing unless use of that manual would violate the *ex post facto* clause of the United States Constitution.  Guideline § 1B1.11(b)(1) states that if the Court does not use the Guidelines Manual in effect on the date of sentencing, then the Court shall use the manual in effect "on the date that the offensive of conviction was committed."  Application Note 2 to § 1B1.11 makes clear that the last date of the criminal conduct in question is to be used as the date when the offensive of conviction was committed.  Section 1B1.11(b)(3) further provides that "[i]f the defendant is convicted of two offenses, the first offense committed before, and the second offense committed after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses."

Defendant Kilbride was convicted of two conspiracy counts.  Count One alleged that Defendants Kilbride and Schaffer conspired to violate the CAN-SPAM Act between January 1, 2004 and April 12, 2005. Dkt. #1, at 2.  Count Eight charged that Defendants Kilbride and Schaffer conspired to commit the offense of money laundering between January 1, 2004 and January 24, 2005. Dkt. #1 at 15.  The jury was instructed with respect to these dates (Dkt. #330, Instructions 21, 47) and found Defendants guilty of both counts. Dkt. #296.  Moreover, the Government presented evidence that both conspiracies extended beyond October 31, 2004, the last date for application of the November 1, 2003 Guidelines Manual.  For example, the Government presented evidence of numerous financial transfers that occurred in furtherance of both conspiracies after November 1, 2004. *See* Exs. 565-572.  The Government also presented evidence that Defendants continued engaging in

communications relevant to their conspiracy after November 1, 2004. *See* Exs. 561, 119.

Because the conspiracies of which Defendants were convicted extended beyond October 31, 2004, the Guidelines Manual that became effective on November 1, 2004 applies to the conspiracy counts and all other counts on which Defendants were convicted if the current manual presents *ex post facto* problems. *See* § 1B1.11(b)(1), (3). Defendant's objection is therefore overruled.

The parties should be prepared to explain at sentencing why the current Guidelines Manual – which appears to be the same as the November 1, 2004 manual in all material respects – should not be applied.

**VI.    Defendant's Objection No. 6 – Loss Calculation.**

In applying Guideline § 2B1.1(b), the PSR looks to the gains realized by Defendants from their violations of the CAN-SPAM Act, rather than looking to losses suffered by the victims. The PSR applies a 16-level enhancement based on Defendants' gain of more than $1 million. Defendant Kilbride objects, arguing that the only known loss in this case – to America On-Line ("AOL") – can reasonably be estimated at less than $10,000 and that use of Defendant's gain is therefore inappropriate. For the reasons explained below, the Court concludes that Defendants' gain is not the appropriate number to use in calculating Defendants' offense level.

Section 2B1.1(b)(1) increases the offense level for the CAN-SPAM Act violations based on the amount of "loss" suffered by victims of the violations. The text of the Guideline says nothing about gain. The Application Notes make clear that the "loss" requirement can be satisfied by a "reasonable estimate of the loss," and even provides several examples of how such an estimate might be reached. § 2B1.1, App. Note 3(C). The Guidelines thus make clear that loss caused to victims, even if only an estimate, is the factor to be used when enhancing a defendant's offense level under § 2B1.1(b)(1).

The Application Notes provide an alternate means for arriving at the loss number if a loss in fact occurred but cannot reasonably be estimated: "The court shall use the gain that resulted from the offense as *an alternative measure of loss* only if there is a loss but it

reasonably cannot be determined." § 2B1.1, App. Note 3(B) (emphasis added).  Gain is not itself proposed as the basis for enhancing a defendant's offense level, but may act as an "alternative measure of loss" – as a surrogate – when the loss cannot be measured.  The touchstone for the guideline enhancement remains loss, and it follows that gain may be used only when it represents a reasonable approximation of the loss.  If there is reason to believe that the gain from an offense greatly exceeds the amount of loss, the gain does not represent a reasonable alternative measure of the loss.

The Court has found no cases specifically addressing this issue under § 2B1.1, but cases addressing a predecessor section – 2F1.1 – make clear that gain may be used only when it reasonably reflects the amount of the loss.  *See United States v. Van Brocklin*, 115 F.3d 587, 600 (8th Cir. 1997) ("[D]etermining loss according to a defendant's profit is [not] necessarily erroneous, so long as the evidence indicates that such a method provides a reasonable estimate of the actual loss."); *United States v. Andersen* , 45 F.3d 217, 221 (7th Cir. 1995) (gain cannot be used as a reasonable estimate of loss "where the relationship between the defendants' gain and any loss suffered by consumers or competitors is, at best, extremely tenuous"); *United States v. Haddock* , 12 F.3d 950, 961 (10th Cir. 1993) ("If gain to the defendant does not correspond to any actual, intended, or probable loss, the defendant's gain is not a reasonable estimate of loss.").  Moreover, the Ninth Circuit "has refused to mechanically apply U.S.S.G. § 2B1.1 and has held that in calculating loss in fraud cases, the sentencing court should take a realistic, economic approach to determine what losses the defendant truly caused or intended to cause, rather than the use of some approach which does not reflect the monetary loss." *United States v. Allison*, 86 F.3d 940, 943 (9th Cir. 1996) (citing *United States v. Harper*, 32 F.3d 1387, 1392 (9th Cir. 1994)).

In this case, the Court cannot conclude that Defendant Kilbride's gain constitutes an "alternative measure of loss."  Defendants earned money from their CAN-SPAM violations when recipients of their emails signed on to pornographic websites and paid a fee, a portion of which was then paid to Defendants as a commission.  Defendants were paid when others chose to spend money on pornography.  This is not a case where Defendants' gain consists

of money stolen or defrauded from victims.  Defendant's gain does not represent someone else's loss.

To be clear, the Court does not doubt that many recipients of Defendants emails were injured in the sense that their privacy and homes were invaded and their sensibilities offended.  Many recipients of Defendants' graphic pornography undoubtedly experienced emotional distress.  But the Application Notes to § 2B1.1 make clear that the losses which will enhance a defendant's sentence are limited to "pecuniary harm" and do not include "emotional distress . . . or other non-economic harm."  App. Note 3(A)(iii).

The only victim identified by the Government that actually suffered pecuniary harm is AOL.  That company lost money when it was required to investigate the many complaints received from its customers.  The Court concludes, however, that the losses suffered by AOL – which were estimated at $10,000 in the plea agreements of Defendants' co-conspirators – do not come close to Defendant's gain of $1,137,539.21.  *See* Dkt. #342-2.  The Government asserts that AOL's losses cannot be estimated and plans to present evidence of this fact at the sentencing hearing.  The Court will consider that evidence when presented.  But unless the evidence credibly suggests that AOL suffered losses in excess of $1 million, the Court will not conclude that Defendants' gain constitutes a reasonable alternative measure of the loss.

The Government states that even if AOL's losses can be estimated, the losses suffered by other ISPs cannot.  But gain may be used as a surrogate for losses "only if there is a loss but it cannot reasonably be determined." § 2B1.1, App. Note 3(B).  Although the customers of other ISPs clearly received Defendants' spam email, the Government has presented no evidence that those other ISPs embarked upon costly investigations like AOL.  Because the Court cannot conclude that losses were suffered by these other ISPs, gain cannot be used as a surrogate for their losses.

**VII.    Defendant's Objection No. 7 – Victim Enhancement.**

Concluding that there were more than 250 victims in this case, the draft PSR increased the base offense level by six.  Defendant Kilbride argued, and the Government agreed, that the more appropriate upward adjustment should be two levels based on mass marketing under

§ 2B1.1(b)(2)(A)(i).  The Court agrees as well, and notes that the final PSR has been changed to include a two-level enhancement based on this "mass marketing" adjustment.

**VIII.   Defendant's Objection No. 8 – Improper Acquisition of Email Addresses.**

Defendant Kilbride objects to the PSR's application of a two level enhancement for obtaining email addresses by improper means.  *See* § 2B1.1(b)(7).  Defendant Kilbride argues that this enhancement became effective on November 1, 2004 and therefore does not apply to this case.  As explained above, however, the Court has concluded that the November 1, 2004 Guidelines Manual (or the current manual) should be applied.

Defendant Kilbride also argues that there is no evidence that email addresses were obtained by improper means and requests an evidentiary hearing if such an enhancement is to be applied.  The evidentiary hearing, if any is to be held, will occur at the time of sentencing.  *See* Fed. R. Crim. P. 32(i)(2).  The Government asks the Court to apply the enhancement based on an FBI 302 dated April 27, 2007, in which a Nicholas Tombros is reported to have told the FBI that Defendants purchased lists of email addresses they knew to have been stolen.  The Government notes that Special Agent Paul Schaaf, who wrote the 302, will be present and available to testify at the sentencing hearing.  The Government also notes that Defendants are free to subpoena Mr. Tombros to testify if they wish to do so.  After hearing any evidence presented by the parties, the Court will determine whether the two-level enhancement in § 2B1.1(b)(7) should be applied in this case.

**IX.   Defendant's Objection No. 9 – Role in the Offense.**

Defendant Kilbride objects to the PSR's four-level enhancement based on his role as a manager or supervisor of the criminal activity.  Defendant Kilbride notes that the manager or supervisor enhancement is only three levels under § 3B1.1(b).

The Government responds by arguing that Defendant Kilbride acted as an organizer and leader of this criminal activity and that the activity involved five or more participants and was also extensive, warranting a four-level increase under § 3B1.1(a).  The Court agrees with the Government, as does the final PSR.  Defendants Kilbride and Schaffer clearly acted as the organizers and leaders of this criminal activity (see Dkt. #334), the activity involved more

than five participants (Ellifson, Rogers, Clason, Compston, Law, Kilbride, and Schaffer), and the activity clearly was extensive, with aspects of the operation in Arizona, California, Amsterdam, the Isle of Man, and Mauritius. Defendant's objection is overruled.

**X.      Defendant's Objection No. 10 – Statutory Maximum.**

Consistent with his first objection, Defendant Kilbride argues that the combined statutory maximum penalty for Counts One through Three is 36 months. The Court agrees that a higher sentence cannot be imposed for these specific counts. *See* § 5G1.1(a). This does not mean, however, that higher sentences cannot be imposed for other counts with higher statutory maximum penalties.

Under § 3D1.3(a), the Court is obligated to apply the offense level "for the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group." Thus, in determining the appropriate offense level for the group of offenses at issue in this case (all of which are properly grouped together as closely related counts under § 3D1.2), the Court is obligated to apply the highest offense level. The Court has not yet determined whether that offense level is arrived at by use of Counts One through Three, Counts Four through Seven or Count Eight, but in any event the offense level will produce a sentencing range in excess of three years. This is not error, even if the sentencing calculation is performed with respect to Counts One through Three. *See United States v. Kroeger*, 229 F.3d 700, 704 (holding that the district court did not err in determining that an endangering-life count under 21 U.S.C. § 858 was the most serious of the grouped offenses and applying it to set the offense level for the group at 37 even though it carried a maximum prison term of only ten years); *United States v. Evans*, 318 F.3d 1011, 1020-21 (10th Cir. 2003) (rejecting the defendant's argument that the district court erred by applying the highest offense level of 35 on a § 858 count because it produced a sentencing range of "168 to 210 months, well in excess of the ten year cap set by [§ 858]"); *United States v. Eversole*, 487 F.3d 1024, 1033 (6th Cir. 2007) (affirming the district court's use of the highest offense level of 40 on a § 858 count rather than the highest statutory sentence among grouped offenses).

Once the highest offense level is calculated, the Guidelines direct the Court to impose the appropriate sentence for the group even if it exceeds the statutory maximum sentence for some or all of the counts in the group.  The sentence is arrived at by imposing statutory maximums on the relevant counts and providing that some portion of some counts will run consecutively as necessary to reach the total punishment called for by the offense level.  *See* § 5G1.2(d).  Thus, even though Counts One through Three have a cumulative statutory maximum of three years, the sentence in this case may lawfully exceed three years for the group of counts on which Defendants were found guilty.  Defendant's objection is overruled.

**XI.  Defendant's Objection No. 11-12 – Obscenity Calculation.**

Defendant Kilbride argues that the guideline calculation for Count Eight should be based on the obscenity counts, not the CAN-SPAM counts.  The Government disagrees.

Count Eight charged Defendants with conspiracy to commit money laundering.  The guideline for this offense provides that the base offense level consists of "[t]he offense level for the underlying offense *from which the laundered funds were derived* if (A) the defendant committed the underlying offense . . . and (B) the offense level for that offense can be determined[.]" § 2S1.1(a)(1) (emphasis added).  Application Note 1 defines "laundered funds" as "the property, funds, or monetary instrument involved in the transaction, financial transaction, monetary transaction, transportation, transfer, or transmission in violation of 18 U.S.C. § 1956 or § 1957."  The conspiracy to commit money laundering charged by Count Eight violated 18 U.S.C. § 1956(h).

The Court's jury instructions with respect to this count required the jury to find that Defendants transported or attempted to transport money from a place in the United States to or through a place outside of the United States, or to a place in the United States from or through a place outside the United States.  Dkt. #330, Instruction 46.  The jury was also required to find that Defendants knew "the money represents the proceeds of some form of unlawful activity, in this case, the violation of [the CAN-SPAM Act]."  *Id*.  Thus, in finding Defendants guilty on Count Eight, the jury necessarily found that Defendants transported or attempted to transport proceeds from their CAN-SPAM Act violations.  Stated in terms of

§ 2S1.1, the proceeds of the CAN-SPAM Act violations constitute the funds involved in the transfers at issue in Count Eight.  Thus, under § 2S1.1(a)(1), the CAN-SPAM violations are "the underlying offense from which the laundered funds were derived."  Defendant Kilbride's objection is overruled.

**XII.   Defendant's Objection No. 13 – Sophisticated Laundering.**

The PSR includes a two-level upward adjustment to the money laundering offense level based on Defendants' use of "sophisticated laundering."  *See* § 2S1.1(b)(3). Application Note 5(A) provides that "sophisticated laundering" means complex or intricate conduct pertaining to the execution or concealment of the money laundering offense. Sophisticated laundering typically involves the use of fictitious entities, shell corporations, two or more levels of transactions, and offshore financial accounts.  As the Court has explained in another order (Dkt. #334), Defendants employed all of these devices.  Their money laundering system was clearly sophisticated.  Defendant's objection is overruled.

**XIII.  Defendant's Objection No. 14 – Role in the Offense.**

Defendant Kilbride objects to the four-level enhancement on the money laundering offense level calculation based on his role in the offense.  For the reasons set forth in Section IX above, the Court overrules this objection.

**XIV.  Defendant's Objection No. 15 – Grounds for Departure.**

Defendant Kilbride objects to the PSR's suggestion that there may be grounds for departure in this case.  The PSR states, however, that there is no information which would warrant a departure from the advisory sentencing guidelines.  This statement in the PSR will not control the Court's evaluation of factors set forth in 18 U.S.C. § 3553(a).  Defendant's objection is overruled.

**XV.   Government's Objections.**

As noted above, the Government argues in its first objection that a five-year statutory maximum should be applied to Counts One through Three.  For the reasons stated in Section I of this order, the Government's objection is overruled.  The Government also objects to the PSR's failure to find obstruction of justice based on Defendant Kilbride's attempted

interference with the testimony of Laval Law.  For the reasons set forth in Section IV of this order, the objection is sustained.

**XVI.  Possible Sentencing Calculations.**

In light of these rulings, the Court will set forth tentative guideline calculations for Defendant Kilbride.  The parties should be prepared to address these tentative calculations, and present evidence as they deem necessary, at the sentencing hearing.

Counts One through Three:

| | |
|---|---|
| Base offense level (2B1.1(a)(2)) | 6 |
| Loss (2B1.1(b)(1)) | 4[2] |
| Mass marketing (2B1.1(b)(2)(A)(ii)) | 2 |
| Improper means (2B1.1(b)(7)) | ?[3] |
| Relocating scheme (2B1.1(b)(9)) | 2 |
| Organizer or leader (3B1.1(a)) | 4 |
| Obstruction of justice (3C1.1) | 2 |
| **Total** | 20 or 22 |

Counts Four through Seven:

| | |
|---|---|
| Base offense level (2G3.1(a)) | 10 |
| Pecuniary gain (2G3.1(b)(1)(A)) | 8[4] |
| Use if computer (2G3.1(b)(3)) | 2 |
| Organizer or leader (3B1.1(a)) | 4 |
| Obstruction of justice (3C1.1) | 2 |
| **Total** | 26 |

---

[2]This assumes the Court determines that AOL's loss can reasonably be estimated at more than $10,000.  Evidence will be presented on this issue at the hearing.

[3]The parties will present evidence on this issue at the sentencing hearing.  If the Court determines that this enhancement applies, two levels will be added.

[4]This assumes the Government can show that Defendants gained more than $70,000 from emails containing the obscene images.  Evidence is required on this issue.

- 13 -

Count Eight:

| | |
|---|---|
| Base offense level (2S1.1(a)(1)) | 14 or 16[5] |
| Violation of § 1956 (2S1.1(b)(2)(B)) | 2 |
| Sophisticated laundering (2S1.1(b)(3)) | 2 |
| Organizer or leader (3B1.1(a)) | 4 |
| Obstruction of justice (3C1.1) | 2 |
| **Total** | 24 or 26 |

The tentative guideline calculations are the same for Defendant Schaffer with the exception of the obstruction of justice enhancement. The Court has no reason to believe Defendant Schaffer was involved in obstructing Laval Law's testimony.

DATED this 21st day of September, 2007.

_____
David G. Campbell
United States District Judge

---

[5]Because this refers back to the offense level for the CAN-SPAM Act violations, this will be 14 or 16 depending on whether the Government shows that defendants used improper means in obtaining email addresses.