**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 05-870-PHX-DGC |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Jeffrey A. Kilbride (2), James R. Schaffer (3), ) | |
| Defendants. ) | |

The parties have filed additional briefing on the issues of forfeiture, fines, and restitution. Dkt. ## 362, 364, 366. This order will set forth the Court's final decision on these issues.

**I.    Forfeiture.**

The Court concludes that Defendants are liable for forfeiture of "any property, real or personal, constituting or traceable to gross proceeds obtained from" the CAN-SPAM Act violations in Counts Two and Three of the Indictment. 18 U.S.C. § 1037(c)(1)(A). The Court also concludes that Defendants are liable for forfeiture of "any property, real or personal, involved in" the money laundering conspiracy set forth in Count Eight, and "any property traceable to such property." 18 U.S.C. § 982(a)(1).

The Court finds, by a preponderance of the evidence, that the "gross proceeds" obtained from Defendants' CAN-SPAM Act violations is $1,137,539.21. This decision is based on the testimony of Ralph L. Gay provided during trial and the affidavit provided by

1 Mr. Gay as an attachment to the Government's Supplemental Brief in Support of its Motion
2 for a Preliminary Order of Forfeiture. Dkt. #342. Defendants argue that this amount should
3 be reduced by $50,878 that Mr. Gay was not able to tie to CAN-SPAM Act violations, but
4 the Court finds by a preponderance of the evidence that the $50,878 should be included. The
5 preponderance of the evidence standard has been satisfied by the analysis set forth in
6 paragraph 5 of Mr. Gay's affidavit. Dkt. #342, Attachment.

7 The Court also finds that the amount "involved in" the Count Eight conspiracy to
8 commit money laundering constitutes $1,137,539.21. The Court disagrees with Defendants'
9 argument that the only funds involved in the money laundering conspiracy were proceeds
10 from the obscene images at issue in Counts Four through Seven. The Court's jury
11 instructions with respect to Count Eight required the jury to find that Defendants transported
12 or attempted to transport money from a place in the United States to or through a place
13 outside of the United States, or to a place in the United States from or through a place outside
14 the United States. Dkt. #330, Instruction 46. The jury was also required to find that
15 Defendants knew "the money represents the proceeds of some form of unlawful activity, in
16 this case, the violation of [the CAN-SPAM Act]." *Id.* Thus, in finding Defendants guilty on
17 Count Eight, the jury necessarily found that Defendants transported or attempted to transport
18 proceeds from their CAN-SPAM Act violations. Stated in terms of 18 U.S.C. § 982(a)(1),
19 the proceeds of the CAN-SPAM Act violation constitute the property "involved in" the
20 money laundering conspiracy. Thus, the amount forfeitable under Count Eight is
21 $1,137,539.21.

22 The Court also disagrees with Defendants' assertion that they should be responsible
23 only for the portion of the illegal or laundered proceeds that they actually received. Section
24 1037(c)(1)(A) requires that Defendants be held liable for the "gross proceeds" of their
25 offense. Section 982(a)(1) requires that Defendants be liable for all of the property "involved
26 in" their money laundering offenses. These statutes do not limit forfeiture to funds actually
27 possessed by Defendants. Moreover, the Court concludes that money received by Ganymede
28 is fairly attributable to Defendants. As indicated in the Court's previous orders (*e.g.,* Dkt.

1  ##334, 358), the Court views Ganymede as an alter ego of Defendants.  Thus, to the extent
2  Ganymede received proceeds from the CAN-SPAM Act violations or as part of the money
3  laundering conspiracy, Defendants received those proceeds.

4  Defendants argue that the Government must prove the forfeiture amount beyond a
5  reasonable doubt.  This is not correct.  As the Ninth Circuit has held, "forfeiture is
6  constitutional when supported by the preponderance of the evidence."  *United States v.*
7  *Shryock*, 342 F.3d 948, 991 (9th Cir. 2003).

8  The Court will enter an order stating that Defendants are jointly and severally liable
9  for forfeiture in the amount of $1,137,539.21.  This amount may be satisfied by property
10 involved in the money laundering conspiracy or property traceable to such property
11 (§ 982(a)(1)), by property constituting or traceable to gross proceeds from the CAN-SPAM
12 Act violations (§ 1037(c)(1)(A)), or by forfeiture payments received from co-Defendants.  If
13 the Government cannot recover the full $1,137,539.21 from such sources, the Government
14 may seek to forfeit substitute property.  Section 982(b)(1) states that the forfeiture of property
15 under § 982 shall be governed by the provisions of 21 U.S.C. § 853.  Section 853(p) provides,
16 in turn, that the Government may obtain the forfeiture of substitute property upon making the
17 showing required by § 853(p)(1).  Thus, if the Government seeks to obtain the forfeiture of
18 substitute property, it will need to make the showing required by § 853(p).  *See United States*
19 *v. Misla-Aldarondo*, 478 F.3d 52, 75 (1st Cir. 2007) (it is the Government's burden to
20 demonstrate that the principal forfeitable assets are unavailable before substitute property may
21 be forfeited); *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (the
22 Government must comply with § 853(p) to obtain an order forfeiting substitute property).

23 With respect to the Stronghold Account, the Court concludes that $192,204.86
24 constitutes property involved in the CAN-SPAM Act violations and money laundering
25 conspiracy, or property traceable to such property.  Although $235,000 in CAN-SPAM Act
26 proceeds were placed in the LBFM Call Account on March 31 and April 9, 2004, Defendants
27 have asserted, without contradiction from the Government, that payments from this account
28 reduced the amount to $192,204.86 before funds were transferred to the Stronghold Account.

Dkt. #362 at 2. Thus, although the "gross proceeds" of Defendants' violations are subject to forfeiture, only $192,204.86 of the Stronghold Account constitutes property obtained from the CAN-SPAM Act violations or involved in the money laundering conspiracy. If the Government seeks to obtain the remainder of the funds in the Stronghold Account, it must make the substitute assets showing required by 21 U.S.C. § 853(p). **Defendants shall not dissipate or move funds from the Stronghold Account without further order from the Court.**

Finally, although forfeiture normally is a matter to be addressed by the jury, Defendants expressly waived their right to a jury determination and agreed that the Court could set the amount of forfeiture. This waiver occurred on the record immediately after the jury returned its verdict on June 25, 2007.

**II.    Fines.**

The fine range set forth in the Presentence Investigation Reports for Defendants Kilbride and Schaffer is $20,000 to $750,000. The Government argues for a higher fine range. Defendants argue that no fine should be imposed in light of the substantial forfeiture obligation.

The Court will impose fines of $100,000 against Defendant Kilbride and $100,000 against Defendant Schaffer. Although Defendants argue that they are unable to pay a fine in light of the forfeiture obligation, they expressly declined to provide financial information to the probation officer in connection with preparation of the Presentence Investigation Report. The Court therefore cannot accept their assertion that they are unable to pay a fine. Moreover, considering the substantial nature of Defendants' criminal behavior, the Court concludes that a fine of $100,000 each is reasonable. Given the substantial prison terms imposed on Defendants, the Court concludes that higher fines are not needed to accomplish the purposes of punishment in this case.

In seeking a higher fine, the Government has submitted evidence concerning Defendants' financial worth. Dkt. #364. Defendant Kilbride has moved to strike this evidence. Dkt. #366. The Court will not strike the Government's evidence. Defendant

Kilbride argues that the evidence is hearsay, but the Rules of Evidence do not strictly apply at the sentencing phase. Indeed, Defendant Kilbride himself provides unsupported assertions about his net worth in connection with the motion to strike. *Id.*

### III. Restitution.

The Court previously determined that America On-Line ("AOL") suffered losses in the amount of $77,500 as a result of Defendants' conduct. Dkt. #358. The Court will require Defendants, jointly and severally, to make restitution to AOL in this amount.

DATED this 11th day of October, 2007.

*[signature]*

David G. Campbell
United States District Judge