**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR-05-870-PHX-DGC |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Jeffrey A. Kilbride (2); and James R. ) | |
| Schaffer (3), ) | |
| Defendants. ) | |

Defendants James Schaffer and Jeffrey Kilbride have filed a Joint Motion for Bail Pending Appeal and to Stay Their Sentences and related motions. Dkt. ##393, 395, 399. For the reasons set forth below, the Court will deny the motion. [1]

Defendants are entitled to release pending appeal if the Court concludes that they are not likely to flee or pose a danger to the safety of the community, and their appeal is not presented for purposes of delay and raises a "substantial question of law or fact" that is "likely to result" in reversal, a new trial, or substantially lower sentences.   18 U.S.C. § 3143(b)(1).  A "substantial question" is one that is "fairly debatable."  *United States v. Handy*, 761 F.2d 1279, 1281-83 (9th Cir. 1985).  The words "likely to result" mean that if Defendants prevail on the fairly debatable question, that decision likely will result in reversal, a new trial, or substantially lower sentences.  *Id*. at 1283.

---

[1] Defendants' request for oral argument is denied.  The Court is thoroughly familiar with this case, the parties have provided a full discussion of the relevant law and evidence (Dkt. ##393, 397), and oral argument will not aid the Court's decision.

The Court does not conclude that Defendants are a flight risk, pose a danger to the community, or have presented their appeal for purposes of delay.  The Court does conclude, however, that Defendants' appeal does not raise substantial issues of fact or law.  The Court will address Defendants' issues separately.

**1.     The "Community Standards" Instruction.**

Defendants first contend that the Court erred when it instructed the jury on the community standards to be applied in deciding the obscenity charges in Counts 4 through 7.  Specifically, Defendants contend that the Court erred when it instructed the jury that "[t]he community you should consider in deciding these questions is not defined by a precise geographical area.  You may consider evidence of standards existing outside of this particular district."  Dkt. #330, Instruction No. 36.  By virtue of this instruction, Defendants contend, "the jury was basically set free to judge community standards by any community it chose, no matter where, even if totally unconnected to the location from which the material was transmitted or received."  Dkt. #393 at 5.

Contrary to this argument, Defendants' own proposed obscenity instruction included an expansive definition of the "present-day community" and did not attempt to limit that community to a precise geographic area.  *See* Dkt. ##234, 241.  Moreover, the Court instructed the jury that it could consider evidence of community standards outside this particular district precisely because Defendants wanted to argue that the jury should consider pornography available on the Internet when identifying the relevant community standards – an argument defense counsel made repeatedly during closing arguments.[2]  Indeed, defense argued during closings that the jury should adopt an "expansive" view of the relevant community and consider not only materials purchased by defense investigators from several communities in Arizona, but also materials available on "the entire worldwide Web."  Defendant's trial strategy was therefore directly contrary to their current claim that the

---

[2]The Court has confirmed these closing arguments by reviewing the Court's unofficial Livenote transcript of June 22, 2007.

1  obscenity instruction should have limited the relevant community to a precise geographic

2  area.

3      In addressing community standards in obscenity cases, the Supreme Court has not

4  held that a "precise geographic area is required as a matter of law." *Hamling v. United*

5  *States*, 418 U.S. 87, 105 (1974). To the contrary, the Supreme Court has held that juries may

6  consider evidence of standards outside the judicial district in question. *Id.* at 105-106. As

7  explained to the parties on the record, the Court relied on this holding from *Hamling* when

8  it instructed the jurors that they may consider evidence of standards from outside the judicial

9  district.[3]

10     Nor is the Court persuaded by Defendants' citation of a jury instruction given during

11  another trial in this courthouse and attached to Defendants' motion. That instruction, like the

12  Court's instruction in this case, informed the jury that "[t]he community you should consider

13  in deciding these questions is not defined by a precise geographic area." Dkt. #393, App.

14  at 5. Moreover, that instruction was given in a case concerning the sale of obscene video

15  tapes within the State of Arizona – quite a different circumstance from this case, in which

16  Defendants transmitted obscene emails throughout the United States.

17     Defendants cite no relevant authority for their argument that the Court's instruction

18  was erroneous. The Court concludes that they have not raised a fairly debatable issue.

19  **2.    The National Standard.**

20     Changing their position from their first argument, Defendants next argue that the

21  Court should have instructed the jury to consider a national community standard when

22  determining whether the images were obscene. Defendants did not propose such an

23  instruction at trial. Moreover, the Court's instruction certainly permitted the jury to consider

24  standards outside of this district and, as noted above, Defendants specifically argued that the

25  jurors should consider the Internet when determining relevant community standards.

26     More importantly, Defendants' argument in favor of a "national standard" is premised

27

28      [3]The Court confirmed this by reviewing the June 21, 2007 unofficial transcript.

on the question of "what is obscene on the Internet." Dkt. #393 at 6. This is not, however, a case about Internet obscenity. This is a case about obscene materials sent directly into the homes of unsuspecting email recipients throughout the United States. The Government presented evidence that individuals who never sought out obscenity on the Internet nonetheless received Defendants' emails in their homes. The question was whether the images sent by Defendants into their victims' homes were obscene, not whether images available for viewing on pornographic websites are obscene.

For just this reason, the Court instructed the jury that it could consider the context in which the images were received:

> In determining whether the charged materials are obscene, you are not limited to the materials themselves. You may also consider the setting, or context, in which the materials were presented. Examples of what you may consider in this regard are such things as the manner of distribution and the circumstances of production, sale, and advertising. Such evidence may support a determination that the material is obscene even though, in another context, the material might not be obscene.

*See* Dkt. #330, Instruction No. 37. Defendants do not challenge this instruction.

Because of the direct-email nature of this case, Defendants' vote-counting argument from *Ashcroft v. ACLU*, 535 U.S. 564 (2002), simply is not relevant. As an initial matter, Defendants themselves note that "the majority opinion in the *Ashcroft* case held that web publishers are responsible to ensure their content comports with local geographical standards[.]" Dkt. #393 at 12. But even if this Court were to consider the views expressed by individual justices in *Ashcroft*, those views concerned restraints on Internet materials that are available world-wide. Justice Breyer, for example, expressed concerned that "adopting the community standards of every locality in the United States would provide the most puritanical of communities with a heckler's veto affecting the rest of the Nation." 535 U.S. at 590. Such concerns simply do not apply to Defendants' activities in this case. Defendants did not post images on the Internet for world-wide consumption; Defendants were not incapable of limiting the distribution of their messages; Defendants purposefully sent images to individual homes and had full control over where and by whom the images were received.

What is more, the Supreme Court has declined to adopt a national standard in

obscenity cases.  As the Supreme Court has explained:  "*Miller* rejected the view that the First and Fourteenth Amendments require that the proscription of obscenity be based on uniform nationwide standards of what is obscene, describing such standards as 'hypothetical and unascertainable.'"  *Hamling*, 418 U.S. at 104 (quoting *Miller v. California*, 413 U.S. 15, 31 (1973)).  The Supreme Court went on to explain that "in doing so the Court did not require as a constitutional matter the substitution of some smaller geographical area into the same sort of formula; the test was stated in terms of the understanding of 'the average person, applying contemporary community standards.'"  *Id*. (quoting *Miller*, 413 U.S. at 24) (citations omitted).  The Court's jury instructions were consistent with this Supreme Court authority.  Defendants have cited no cases in support of their "national community" arguments and have failed to raise a fairly debatable issue.

### 3.    Altering or Concealing Header Information.

Defendants do not challenge the constitutionality of the CAN-SPAM Act, nor do they contend that the Court erred in instructing the jury on the requirements of the Act. Defendants instead contend that the evidence does not support their convictions on Count 2 because the Government did not prove that email header information was altered or concealed as required by 18 U.S.C. § 1037(a)(3).  In support of this argument, Defendants provide a description of the evidence that is largely unfamiliar to the Court and does not appear to be an accurate recounting of the proof presented at trial. Dkt. #393 at 9-11.  The Court described the evidence in an order dated August 24, 2007, and found that the evidence against Defendants on Count 2 was substantial and convincing.  *See* Dkt. #334 at 6-18.  The Court's recounting of the evidence was not made in the light most favorable to the Government – the standard that will apply on appeal – and yet still found the evidence more than sufficient to sustain Defendants' conviction.  *See* Dkt. #334 at 7.  Given the substantial nature of the evidence, Defendants have not raised a fairly debatable issue concerning the weight of the evidence on Count 2.

### 4.    Altering or Concealing Registrant Information.

Defendants briefly contend that the evidence does not support their convictions on

Count 3 because it did not establish that the identity of the actual registrant was altered or concealed as required by 18 U.S.C. § 1037(a)(4). For reasons set forth at length in the Court's order of August 24, 2007, the Court found the evidence in support of Defendants' convictions on Count 3 to be substantial. *See* Dkt. #334 at 18-22. Defendants have not raised a fairly debatable issue concerning the sufficiency of the evidence on Count 3.

### 5.   Violations of 18 U.S.C. § 1037.

Defendants argue that several activities, such as remotely logging onto servers in a foreign country or making up domain names, are not prohibited by the CAN-SPAM Act. The Court agrees. Defendants were not convicted for these isolated activities. Defendants were convicted of engaging in a scheme of computer fraud that resulted in clear violations of 18 U.S.C. § 1037(a)(3) & (4). The fact that otherwise innocent actions were part of the overall fraudulent enterprise does not render a guilty verdict on the fraudulent enterprise erroneous. Substantial evidence supported Defendants' convictions. *See* Dkt. #334 at 6-22.

### 6.   Money Laundering.

Defendants argue that the money laundering statute applies only to "specified unlawful activity" and that a violation of the CAN-SPAM Act cannot constitute such activity. *See* 18 U.S.C. § 1956(a)(2)(B)(i), 1956(c)(7), 1961(1). The premise of this argument is incorrect. The Court instructed the jury that the specified unlawful activities in this case were the obscenity violations in Counts 4 through 7, not the CAN-SPAM Act violations in Counts 2 and 3. *See* Dkt. #330, Instruction No. 46.

### 7.   Irrelevant or Prejudicial Evidence.

Defendants argue that several categories of evidence were irrelevant or unfairly prejudicial. The Court concludes that Defendants' evidentiary objections do not raise fairly debatable issues, nor are they issues that likely would result in a reversal, a new trial, or substantially lower sentences.

The jury was not presented with confusing evidence concerning civil violations of the CAN-SPAM Act. Defendants, not the Government, called the jury's attention to civil provisions of the statute. The Government was permitted to present evidence to explain the

nature of Defendants' spam email operation, and the jury was carefully instructed on the criminal elements of the CAN-SPAM Act.

Nor was the jury misled or prejudiced by the Government's reference to Defendants' "criminal porn spam conspiracy."  Defendants repeatedly noted during trial, through numerous witnesses, that sending bulk pornographic emails is not illegal, a point the Government never contradicted.  The evidence focused on false header and registration information.  The Court carefully instructed the jury on the elements of conspiracy – instructions Defendants do not challenge.  Dkt. #330, Instruction Nos. 21-23.  And the Government clearly argued in closings that there was an agreement between Defendants and others "to commit at least one of the two CAN-SPAM Act violations alleged in Counts 2 and 3."  Dkt. #319-13 at 9.

Evidence concerning the number of complaints received by AOL, and that the emails were sent from multiple domain and IP addresses, was directly relevant to the question of whether Defendants sent "multiple commercial electronic mail messages" with misleading header and registration information as required for violations of the CAN-SPAM Act.  *See* 18 U.S.C. § 1037(a)(3) & (4).  The testimony of AOL personnel was also important to the jury's understanding of how the header and registration information was misleading even for a sophisticated "Internet access service" – one of the specific categories of potentially misled entities identified in the CAN-SPAM Act.  *See* 18 U.S.C. § 1037(d)(2).

Finally, testimony from individuals who received Defendants' emails was relevant to the misleading nature of Defendants' header and registrant information, the nature and purpose of Defendants' spam email operation, and the context in which Defendants' emails were received for purposes of assessing the obscenity charges.  It was also responsive to Defendants' assertion that they carefully limited distribution of their emails to persons who previously had subscribed to pornographic websites.

### 8. Conclusion.

Because Defendants have failed to identify a fairly debatable issue that, if decided in their favor, would likely result in reversal, a new trial, or a substantially lower sentence, they

1   are not entitled to release pending appeal under 18 U.S.C. § 3143(b)(1).

2

3       **IT IS ORDERED:**

4       1.      Defendants' Joint Motion for Bail Pending Appeal and to Stay Their Sentences

5               (Dkt. #393) is **denied**.

6       2.      Defendants' Request for Judicial Notice (Dkt. #395) is **granted**.

7       3.      Because the Court has ruled in advance of Defendants' surrender date,

8               Defendants' Joint Emergency Motion for Order Continuing Surrender Date

9               (Dkt. #399) is **denied**.

10      DATED this 28th day of November, 2007.

11

12

13      _____

                        David G. Campbell
14                  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28